J. R. SQUIRES, *Plaintiff in Error*, v. FOREST KILGORE, *Defendant in Error*.

En Banc.

Opinion Filed November 29, 1926.

1. Evidence examined and found sufficient to sustain allegations in declaration that defendant agreed with plaintiff to pay him a certain commission for finding a purchaser, ready, able and willing to buy certain property.

2. A memorandum relating to the terms of a parol contract made at the time by one of the parties negotiating the contract and read over to the other and approved by him, although not in itself a valid written contract, may be competent as substantive evidence tending to establish, in connection with other evidence, the terms of the contract. But the memorandum is not admissible if it was not made under the direction of both the parties or subsequently approved by them.

A Writ of Error to the Circuit Court for Orange County; J. J. Dickinson, Judge.

Affirmed.

*Chas. P. Dickinson,* for Plaintiff in Error;

No appearance for Defendant in Error.

BROWN, J.—The defendant in error, plaintiff in the court below, obtained a judgment against the plaintiff in error for a real estate agent's commission in the sum of $1650.00; which judgment was brought before us for review on writ of error.

The declaration was in two counts, each count alleging that the defendant had employed the plaintiff to find a purchaser for certain described real estate at and for the total sum of $33,000.00, for which the defendant was to pay the plaintiff a commission of five per cent on such purchase price; that the plaintiff did secure a purchaser for said property, one A. T. Carter, who was ready, able and willing to purchase said property and contracted and agreed to purchase the same upon the terms agreed to by the plaintiff. The first count stated the terms to be $33,000.00, $3,000.00 to be paid in cash, and the balance in deferred payments to bear interest at the rate of eight per cent per annum, without particularizing the maturities and amounts of the deferred payments. The second count alleges the terms to have been $33,000.00, $3,000.00 in cash at the time of the delivery of contract, and the maturities and amounts of the deferred payments are particularized, covering a period of some six years, all such deferred payments to bear interest at the rate of eight per cent; also alleging that the defendant agreed to place a good and sufficient warranty deed conveying said property in

escrow, together with a contract of sale.   Pleas of the general issue and several special pleas were interposed to each count.

It is contended that the court below erred in denying defendant's motion for new trial upon the ground of insufficiency of evidence to support the verdict, the particular contention being that the declaration claims a commission for finding a purchaser ready, able and willing to buy on the recited terms, whereas the testimony showed that the plaintiff was employed to sell the property.  It is true that a clear distinction is drawn, in the case of Wiggins Wilson, 55 Fla. 346, 45 Sou. 1011, between the employment of a broker to find or procure a purchaser for the property of another and his employment to effect a sale of such property.  It was held in the cited case that a broker employed to sell, that is to effect a sale, as distinguished from one employed merely to find a purchaser, is not entitled to compensation until he effects a sale or procures from his customer a binding contract of purchase within the terms of his authority.  See also Varn v. Pelot, 55 Fla. 357, 45 So. 1015; Elliott v. Gamble, 77 Fla. 798, 82 So. 253; Cumberland Savings and Trust Company v. McGriff, 61 Fla. 159, 54 So. 265.  It is quite clear that a broker who is employed to effect or consummate a sale does not comply with his contract by merely finding a purchaser who is ready, able and willing to buy on the terms prescribed by the owner, unless he actually effects the consummation of the sale or procures from his customer a valid contract of purchase within the terms of his authority; but it may be that a broker employed to find a purchaser would be entitled to commission if he not only found and produced a purchaser who was ready, able and willing to buy on the terms prescribed by the owner but who actually did buy, or entered into a binding contract of purchase within the

prescribed terms. In such latter case, a declaration setting up employment of the plaintiff broker to find a purchaser, ready, able and willing to buy, might be sustained, and there would be no valid objection to the plaintiff's right to recover merely because the evidence showed that he not only performed his contract but did more than it required. If this be correct, it might be that a declaration claiming a broker's commission for finding a purchaser, ready, able and willing to buy might be sustained by proof of his employment to sell, and evidence that he found and produced a purchaser, ready, able and willing to buy on the terms authorized by the owner and that the sale would have been consummated had not the defendant failed or refused to go on with the trade. An agreement to sell property for another necessarily implies an agreement to find a purchaser—otherwise a sale could never be made—and the greater includes the lesser. However, it is not necessary for us to here decide this question.

A careful reading of the evidence shows that the jury was not without a basis therein for finding that the plaintiff in this case was employed to find a purchaser. It is true the plaintiff testified in one place that the defendant agreed that he might sell the property and named the price at $35,000.00, including the fixtures; but immediately succeeding this testimony, the plaintiff also testified that he at once agreed to find a purchaser and that the defendant subsequently reduced the price of the property without the fixtures to $33,000.00. The lower court will not be held in error for denying the motion for new trial on that ground. As was said in Varn v. Pelot, *supra*, "While perhaps it is more usual for agreements between property owners and real estate brokers to be express, there is nothing in the employment to prohibit absolutely implied promises." Considering all the evidence introduced in

behalf of the plaintiff, it could hardly be said that there was no evidence from which the jury could have found that there was an agreement between plaintiff and defendant of the character described in the declaration.

It is next insisted that the court erred in admitting in evidence over the objection of the defendant two typewritten statements or memoranda purporting to set forth the terms of sale, but which were not signed. The plaintiff testified that the first of these statements was written out by him in the presence of the defendant, on the defendant's typewriter and stationery, after a conversation in which they had agreed upon the terms upon which the property was to be sold; that after he had written out this memorandum, he handed it to the defendant to read, and after reading it the defendant stated that it was "perfectly acceptable." The defendant objected to the introduction of this memorandum upon the ground that it was not signed by Mr. Squires, that it was not in the terms upon which they finally agreed, nor the terms stated in the declaration, and that it was merely a self-serving declaration. Counsel for plaintiff stated that the document was offered to show acquiescence of the defendant in the deal and his participation in attempting to arrive at a final agreement as to what the terms would be, and that it was not offered as the final contract. The court stated that it would be admitted for that purpose only. It seems from plaintiff's evidence that the prospective purchaser, a customer of the plaintiff, did not agree to these terms in full, and that they were afterwards modified; that plaintiff then returned to the defendant and obtained his consent to the modified terms, whereupon the plaintiff wrote out in defendant's presence and on his typewriter another document stating the terms in detail as he claims they had been stated and agreed to by the defendant at

the time. The last document referred to is in the form of
an agreement of sale and recited the existence of certain
encumbrances on the property.  Plaintiff testified that
the last document contained some information given him
by the defendant at the time, with which he was not
familiar, but that he did remember, and attempted to tes-
tify to, independently of the memorandum, the terms of
sale as to cash and deferred payments, and plaintiff fur-
ther testified that the latter document was also written on
same typewriter in the defendant's presence, was a correct
statement of what had just been agreed upon, and was
read and approved by the defendant, at the time, as cor-
rect, and that these were the terms on which he procured
the purchaser, ready, able and willing to buy.  Plaintiff
also testified that he did not ask the defendant to sign
either of these documents.  Defendant admitted that the
second memorandum was written in his office and on his
typewriter, though he did not approve it because it did not
correctly state the terms, but denied that the first paper
was written in his office and on his typewriter, and denied
also its correctness as a statement of the terms.  The de-
fendant objected to the admission in evidence of this paper
upon the ground that it was a self-serving declaration, that
defendant had refused to and had not signed the same, and
that it was immaterial to admit in evidence one paper to
be compared with another; that the method of proof is by
experts.  The plaintiff offered this document as part of
the transaction testified to by plaintiff; also to show the
date or time of writing as corresponding with the time of
the conference testified to by plaintiff, and also for the
purpose of a comparison of the typewriting with that of
the other document, and stated that the paper was not in-
troduced upon the claim that it was a contract.  The court
admitted it in evidence.  Of course, neither of these papers

was of any probative force or value unless the jury believed the testimony of the plaintiff to the effect that they were agreed to or approved by the defendant in containing an acceptable statement of the terms upon which he was willing to sell the property, but if the jury so believed plaintiff's evidence, as it was within their province to do, the memorandum would certainly be helpful evidence. If the jury should have disbelieved the plaintiff's testimony as to defendant's approval of the papers, they certainly would not have given them any weight. But there can be no doubt of the admissibility of these papers, taken in connection with plaintiff's testimony as to their approval by defendant. The prevailing rule on this subject, supported by citations of decided cases, is set forth in 22 C. J., page 896, Sec. 1093, as follows:

"A memorandum relating to the terms of a parol contract made at the time by one of the parties negotiating the contract and read over to the other without dissent, or made by a third person under circumstances showing an assent thereto by the parties, although not in itself a valid written contract, may be competent as substantive evidence tending to establish, in connection with other evidence, the terms of the contract. But the memorandum is not admissible if it was not made under the direction of both the parties or subsequently approved by them."

This rule is supported, by implication at least, by several decisions of this Court, viz., Germania Fire Ins. Co. v. Stone, 21 Fla. 555; Dixie Fire Ins. Co. v. Hillsborough Dry Goods Co., 77 Fla. 250, 81 So. 446. This rule need not be confused with the familiar rule that memoranda made by a witness at the time or about the time of a transaction and which he knew at the time to be correct, can be referred to by the witness to refresh his recollection; then if he can testify to the facts independently of the memo-

randum, he may do so, and his *ex parte* memorandum is not itself admissible in evidence. If, after attempting to refresh his memory by reference to the memorandum, he has no independent recollection but can testify that he made the memorandum contemporaneously with the transaction, that he knew the facts at the time he made it, and that he correctly noted them in such memo at the time, the memorandum itself becomes admissible. See 22 C. J. 893-986.

We find no reversible error in the record and the judgment of the court below is affirmed.

Affirmed.

TERRELL, STRUM AND BUFORD, J. J., concur.

ELLIS, C. J., dissents.

ELLIS, C. J., dissenting.—I think the judgment in this case should be reversed.

The declaration is upon a verbal contract to employ the plaintiff to secure for the defendant a purchaser for a certain tract of land at the price of $33,000.00 of which $3,000.00 were to be paid in cash and the balance of the deferred payments to bear interest at the rate of 8 per cent per annum. The plaintiff was to receive a commission of 5 per cent upon the price.

The first count of the declaration alleges that the plaintiff secured a purchaser who was ready, able and willing to buy upon the terms and at the price stated.

The second count alleges the existence of a verbal contract of employment to secure a purchaser of the lot for the sum of $33,000.00. The price and terms were then particularly set forth as follows: "Three Thousand ($3,000.00) Dollars in cash at the time of the delivery of the contract;

$3,000.00 on March 1st, 1923; $4,000 on March 1st, 1924; $4,000.00 on March 1st, 1925; $4,000.00 on March 1st, 1926; $6,500.00 on March 1st, 1927; and $6,500.00 on March 1st, 1928; all of said deferred payments to bear interest at the rate of 8 per cent per annum." The terms of payment as set forth particularly in this count show that the price was to have been $31,000.00. The second count also alleges that under the contract the defendant was to have placed "a good and sufficient warranty deed conveying said property in escrow, together with a contract of sale, and agreed to pay this plaintiff in the event of his securing a purchaser for said premises a commission of 5 per cent of said purchase price." The count alleges that a purchaser was secured who was ready, able and willing to purchase the property and who agreed to purchase the same for $33,000.00 "on the terms and conditions above set out and to make the payments as therein required."

The defendant interposed four pleas to each count: first, that he did not promise as alleged; second, that he never was indebted as alleged; third, the third plea was a denial of the contract; fourth, this plea tendered the following issue: the "defendant informed the plaintiff that said property was owned by the wife of this defendant and she would have to make the price and terms on same." That complainant interviewed defendant's wife in "reference to the selling of said property" and the defendant did not enter into any agreement with reference to the sale of same.

These pleas were interposed to each count. The record shows that the cause came on to be tried on the "issues joined" between the parties. Now, the second and third pleas should have been stricken because the second was inapplicable and the third was covered by the first.

That left two issues: first, whether there was any such contract between the plaintiff and defendant as alleged, see Rule 64, Rules of Circuit Courts; and second, whether

defendant informed the plaintiff that the property was owned by the former's wife and that she would have to make the price and terms. Even if the issue presented was immaterial the parties went to trial on it and the evidence fully supported it. The court instructed the jury upon the issue presented by that plea. The evidence was practically uncontradicted in support of it.

According to the testimony of Mr. Kilgore, the plaintiff, himself, on June 5, 1922, Mr. Squires wrote him that he would take $35,000.00 for the building and fixtures and pay to Mr. Kilgore 5 per cent commission; that if the "party should not need any fixtures would take a little less than $35,000.00 for the building alone." It cannot be reasonably contended that the letter of Mr. Squires was an employment of Mr. Kilgore for the purpose and upon the terms stated in the declaration. Now, on that same day, according to his testimony, he called upon Mr. Squires at Kissimmee and in the latter's office wrote out the "terms we agreed on at that time." Mr. Kilgore then went back to Orlando, submitted the memorandum to Mr. Carter, the prospective purchaser, who did not agree to those terms but figured over it all night and the following morning he gave me a memorandum that did not exactly coincide with those terms but figured the aggregate about the same." This must have been June 6th. So far there was no agreement of any kind between the parties, except as between Mr. Kilgore and Mr. Carter, who agreed tentatively with Mr. Kilgore to buy if Mr. Kilgore "could get certain terms, these terms modified slightly." Mr. Kilgore then went to Kissimmee again, saw Mr. Squires, wrote out a "long agreement with him." On cross examination Mr. Kilgore said: "At the time we wrote this and agreed verbally, I said now I am going to have this right, and I went to the typewriter and wrote this out and I said to Mr. Squires

you have sold your building, and he said my wife owns it, and you will have to go see her.''

The next day, which was June 7th, Mr. Squires telegraphed to Mr. Kilgore that the proposition was refused and that no price would be made at this time.

In this testimony, which is that of the plaintiff himself, there is nothing whatsoever to support the allegations of either count of the declaration but on the other hand is indisputable proof of the averments of the fourth plea.

Now, the majority opinion holds this transaction to constitute a contract by defendant to employ the plaintiff to find a purchaser for the lot at the price and upon the terms set out in the first count of the declaration. Just when the contract was made is not pointed out, but it must have occurred at some point in the conversation between Mr. Kilgore and Mr. Squires that 6th day of June in Mr. Squires' office. Up to that time there was no contract of any kind. It is a new proposition, one with which I am not acquainted, that where two men are discussing the terms of a proposition not yet become a contract that one of them may interrupt the other in the middle of a sentence and say: ''At this comma our minds have met'' and the contract is complete, while the other is insisting that there are yet other considerations which have to be met.

But the plea did not tender an immaterial issue. Its averments were admissible under the general issue and the plea may have been stricken for that reason, but that course was not taken. If the plea was true then no contract, such as is alleged in either count of the declaration, was possible until the terms of sale were agreed to by the defendant's wife.

There is another equally vital defect in the case according to the account of the transaction as given by the plaintiff, himself, in his testimony. He secured a purchaser for

the property before he had any contract from the defendant engaging him to perform that service. When Mr. Kilgore went to see Mr. Carter and interested him in the lot Mr. Kilgore had an agreement with Mr. Squires that if the former sold the lot at the price named he should receive 5 per cent commission from Mr. Squires. So much was contained in the letter of June 5th, but this was not an employment to find a purchaser. Under this employment the plaintiff would have been required to obtain from the purchaser a valid contract of purchase. See Elliott v. Gamble, 77 Fla. 798, 82 South. Rep. 253; Wiggins v. Wilson, 55 Fla. 346, 45 South. Rep. 1011.

Now, the price named in the letter was not satisfactory to the purchaser so Mr. Kilgore called upon Mr. Squires and they formulated another proposition. A memorandum of that proposition was made by the plaintiff, neither party signed it but it was admitted in evidence over defendant's objection. That memorandum was signed by no one, addressed to no one and was undated. It was made, however, on June 6th and contained a proposition to "sell my lot and brick building," etc., at a certain price and on certain terms, and contained the following clause: "I will pay you the regular 5 per cent commission for making the deal." This proposition was submitted by Mr. Kilgore to Mr. Carter who considered it during the night of that day and the next day, which was June 7th, declined it, but submitted a different proposition. That is, he said to Mr. Kilgore that he would buy if Mr. Squires would sell on the terms and at the price submitted by Mr. Carter. Mr. Kilgore then called upon Mr. Squires to submit Mr. Carter's proposition. It was then that he prepared the second memorandum.

The second memorandum was dated June 7, 1923. It was unsigned and addressed to no one. It was admitted in

evidence over defendant's objection. Its first sentence reads as follows: "I hereby agree to sell and convey my right, title and interest, subject to present leases, my property located in Orlando, Florida," etc. Then follows description. This memorandum contains the following clause: "I will deliver good title to this property and will pay to you for making this sale the regular commission of five per cent on the purchase price."

Even if the defendant agreed to this memorandum it was not, in any event, an employment to find a purchaser nor was it an agreement of any kind because, according to Mr. Kilgore, the defendant said: "the property belongs to my wife and you will have to get her consent to the terms." But even if Mr. Squires agreed to the memorandum it was not a memorandum of an agreement to pay the plaintiff for finding a purchaser. If there was any employment at all it was to effect a sale and could only be performed by the plaintiff actually making a sale or securing a contract of sale from one able, willing and ready to buy on the terms and at the price named. See authorities above cited.

So there was a total failure to sustain any essential element of the alleged contract of employment, as well as to show performance *under* it. Mr. Kilgore was acting for Mr. Carter, the prospective purchaser, in endeavoring to obtain the defendant's acceptance of Mr. Carter's proposition which, according to Mr. Kilgore, was acceptable to the defendant but would have to receive Mrs. Squires' approval before a contract could be made to sell. How any person can with a semblance of correct reasoning twist this transaction into evidence of the fulfillment of a contract to secure a purchaser at a certain price and on certain terms is incomprehensible to the writer.

The majority opinion contains no reference to the points

above discussed but disposes of the questions by the statement merely that "a careful reading of the evidence shows that the jury was not without a basis therein for finding that the plaintiff in this case was employed to find a purchaser." I am of the opinion that a careful reading of the evidence shows that there was no basis whatsoever for the jury's verdict in this case.

I am also of the opinion that the so-called unsigned memoranda of the alleged agreement were not admissible in evidence; that such memoranda were harmful to the defendant's case and objection to the reception of them in evidence should have been sustained. Furthermore such unsigned memoranda are admitted in evidence to show the terms of a contract the existence of which is not denied; but where the terms are in dispute and the parties are agreed that a memorandum of such terms was made but not signed, in such case the parties are not permitted to testify from memory, as was done in this case, what the terms of the agreement were; they are confined to the memoranda.

I think there was error in admitting the unsigned memoranda because there was no evidence that a contract had been entered into between the parties further than the testimony of the plaintiff who offered the memoranda as proof of the existence of the contract. Or, as counsel said: to show "what the agreement and understanding of the parties was at the time and that Mr. Squires participated in that agreement and understanding."

The rule is that the unsigned memorandum under proper conditions is competent as substantive evidence to establish in connection with other evidence the terms of a contract the existence of which is not disputed. It is to the above rule that the text in 22 C. J., page 896, and authorities cited in the foot notes relate. See also Mobile Marine Dock and Mutual Ins. Co. v. McMillian & Son, 31 Ala. 711; Wil-

liamson v. Hill, 3 Mackey's Rep. (D. C.) 100; Hosford v. Foote, 3 Vt. 391; Flood v. Mitchell, 68 N. Y. 507.

It is stated in the majority opinion that the rule announced in that opinion is supported by implication by Germania Fire Ins. Co. v: tone, 21 Fla. 555; Dixie Fire Ins. Co. v. Hillsborough Dry Goods Co., 77 Fla. 250, 81 South. Rep. 446. In the latter case there was a contract of insurance. The action was on the contract. It was incumbent on the plaintiff to prove the amount of the loss by fire. It offered as evidence an inventory of the goods destroyed taken several days prior to the date of the fire. The Supreme Court held the evidence inadmissible and reversed the judgment which was for the insured.

In the case first mentioned the action was on a contract of fire insurance. There was judgment for the plaintiff. The insurance company sought a reversal on appeal. It urged that a statement made by the assured when the loss occurred and which was reduced to writing and not signed should have been permitted by the trial court to be read in evidence as an examination taken under the policy. This court held the action of the trial court to be correct and said: ''We do not see under what principle of law it can be admitted as of itself evidence against the plaintiff.''