JOSEPH MALEVER, *Plaintiff in Error*, v. C. M. LIVINGSTON, *Defendant in Error*.

Division A.

Opinion Filed February 15, 1928.

*H. M. Hampton,* Attorney for Plaintiff in Error;

*W. K. Zewadski,* Attorney for Defendant in Error.

BROWN, J.—This is an action to recover a commission for selling real estate.

The first count of the declaration alleged that Livingston, the plaintiff, was employed by the defendant, Malever, to

sell certain real property in Ocala for the sum of fifty thousand dollars, for a commission of one thousand dollars to be paid for his services; that the plaintiff procured a customer and produced him to the defendant, whereupon the defendant negotiated a sale of said property with said customer, for the price of fifty thousand dollars, leaving nothing for the defendant to do but execute the necessary conveyance of title; that a sale of said property having been effected by the plaintiff, at the price fixed by the defendant, the defendant then and there became liable to plaintiff for the amount of the commission, but refused to pay same.

The second count alleges, that the defendant employed the plaintiff to sell said property for the sum of fifty thousand dollars, for a commission of one thousand dollars to be paid therefor, and that the plaintiff produced to the defendant, "a customer ready, able and willing to buy said property at and for the price of fifty thousand dollars, and as a result thereof, they, the customer and the defendant, concluded a contract of sale at the price fixed by the defendant" to-wit, fifty thousand dollars, and the defendant then and there became and was liable to the plaintiff in the sum of one thousand dollars, which it is alleged the defendant had refused to pay.

It will be observed that both counts allege that the plaintiff was employed *to sell*. The first count alleges, in effect, that a sale was concluded between the defendant and the customer produced by the plaintiff, at the price fixed by the defendant; while the second count alleges that the plaintiff produced to the defendant, a customer ready, able and willing to buy the property at the price fixed by the defendant, and that they, the customer and the defendant, concluded a contract of sale at such price.

The defendant demurred to each count of the declaration,

upon the ground that neither count showed that a sale was made, or alleged that the sale, or contract of sale, was binding upon the alleged purchaser.

This demurrer was overruled. The defendant then filed pleas of the general issue, and a special plea denying that the defendant had employed the plaintiff to sell the land mentioned in the declaration, and also denied that the plaintiff had procured a customer with whom the defendant had negotiated a sale of said property for the price, as alleged, leaving nothing for the defendant to do but execute conveyance of title. There was a verdict and judgment for the plaintiff, and the defendant took writ of error.

It will have been observed, that nothing is said in the declaration about the terms of sale as agreed on between the defendant and the customer, except that the plaintiff was employed to sell for the sum of fifty thousand dollars. Neither does the evidence in the case show what terms were agreed upon orally between the parties. There was no written contract executed by the parties or either of them. Malever did not testify. The plaintiff broker and the customer procured by him, did testify, and their testimony was, to the effect, that the defendant had employed the plaintiff to sell the property for fifty thousand dollars; that the plaintiff procured the customer, who was ready, able and willing to buy at that price, if "terms" were allowed —what "terms" meant is not stated; that the plaintiff broker brought the customer to the defendant and the defendant agreed to sell the property to the customer so produced, at the price of fifty thousand dollars upon terms agreed on between them, which contemplated the making of a deed by the defendant and the giving back of a mortgage by the purchaser for some portion of the purchase money. What amount of cash was to be paid and what was to be covered by the mortgage, is not shown by the testi-

mony, which merely shows that the defendant and the customer agreed on terms of sale satisfactory to the defendant. Then the testimony goes on to show that after this oral contract of sale had been made, and the customer had given and the defendant had accepted a check for one thousand dollars in part payment, a change came over the spirit of the defendant's dream, and that at a subsequent meeting a day or two later when the written contract, which it is somewhat vaguely testified, embodied the oral contract already agreed upon, was produced for the signature of the parties, the defendant refused to sign and refused to go any further with the transaction. The evidence does not show that the customer had ever signed this or any other written contract. A day or two later, the defendant returned the uncashed check to the customer by mail.

The first assignment of error is based upon the overruling of the demurrer to the declaration. In the leading case of Wiggins v. Wilson, 55 Fla. 346, 45 So. 1011, it was held that a broker employed *to sell,* as distinguished from a broker employed to *find* a *purchaser,* is not entitled to compensation until he *"effects* a *sale* or procures from his customer a binding contract of purchase within the terms of his authority." In the opinion, by Mr. Justice TAYLOR, it is also said that, as to a broker employed to sell, he "not only finds a purchaser, but negotiates the sale with him on the terms authorized by his principal, leaving nothing for the seller to do but execute the necessary transfer of the title to the property." We think this means something more than that the broker who is employed to sell fulfills his contract of employment and becomes entitled to his commission, by merely finding a purchaser, ready, able and willing to buy on the terms fixed by the principal and producing him to the owner, or by introducing to the owner a customer who has verbally agreed to buy at the price named by the prin-

cipal and who, when brought to the principal, verbally agrees with him on all the terms of sale, and even makes a payment of earnest money—pays something on purchase price. It means, as applied to the facts pleaded in this case, and as a general rule in the absence of contractural stipulations otherwise that the broker must have effected a completed sale of the property, pursuant to the broker's authority, i. e., the deed must have been executed and delivered by the seller and the proper cash payment made and mortgage and note or notes executed and delivered by the purchaser for the balance; or, the broker must have "procured from his customer a binding contract of purchase within the terms of his authority," i. e., a written contract which the principal could enforce, leaving nothing for the principal to do on his part but to execute at the proper time the necessary transfer of the title to the property. Whatever may be said of the evidence, the facts pleaded by the plaintiff show nothing that would relieve him from the operative effect of this general rule.

That this is the true meaning of the holding and opinion in Wiggins v. Wilson, *supra.*, is indicated by our own subsequent cases. See Varn v. Pelot, 55 Fla. 357, 45 So. 1015; Cumberland Saving & Trust Co. v. McGriff, 61 Fla. 159, 54 So. 265; Elliott v. Gamble, 77 Fla. 798, 82 So. 253; Squires v. Kilgore, 111 So. 113, 92 Fla. 1001. The case of Rhode v. Gallat, 70 Fla. 536, 70 So. 471, might be read in this connection. This construction is also borne out by the case of Ormsby v. Graham, 123 Ia. 202, 98 N. W. 724, cited in this connection by Justice TAYLOR in the opinion in Wiggins v. Wilson. In Ormsby v. Graham, the Iowa court quotes with approval the rule that, "under a contract giving the agent authority to sell, and providing a commission for such service, the mere production of a purchaser who is willing to buy upon the stated terms is not sufficient, but

an actual sale or binding contract of sale must be shown before a recovery can be had upon the agreement,'' (citing authorities.) And again: ''Upon such a claim, based upon such an agency, we have heretofore held that the recovery of commissions depends upon a 'consummated sale'—not necessarily a sale consummated by the delivery of deeds of conveyance, but such a contract as will be enforced by the courts, if enforcement be demanded. In Wilson v. Mason, *supra,* (158 Ill. 304, 42 N. E. 134) the Illinois court reviews the leading precedents, and holds the true rule to be that the commission of an agent who undertakes to sell (as distinguished from a mere agreement to find a purchaser) 'is earned when a contract is entered into which is mutually obligatory upon the vendor and the vendee.' '' And in our own case of Squires v. Kilgore, *supra,* it was said: ''It is quite clear that a broker who is employed to effect or consummate a sale does not comply with his contract by merely finding a purchaser who is ready, able and willing to buy on the terms prescribed by the owner, unless he actually effects the consummation of the sale or procures from his customer a valid contract of purchase within the terms of his authority''; etc.

In order to uphold the sufficiency of the declaration as against the demurrer, we would have to interpret the general allegation of the conclusion of the pleaders that ''a sale'' or a ''contract of sale,'' was effected or brought about between the parties by the plaintiff, as meaning either a consummated sale, by the transfer of the title, etc., or the execution of a binding contract of sale which his principal could enforce if necessary. We would hardly be warranted in going so far in order to sustain the declaration. The pleading must be construed most strongly against the pleader. The declaration should have alleged at least sufficient ultimate facts to show whether or not

there was in fact a consummated sale or a binding contract within the meaning of those terms as hereinabove outlined, or have alleged facts, which would have excused the plaintiff from carrying out his contract to sell in these respects, by waiver, or wrongful refusal to perform on the part of the principal, if such be allowable, as we will presently consider. The plaintiff's evidence showed that his interpretation of an ''effected sale'' was the securing of a verbal agreement of sale between the parties coupled with the payment of one thousand of the fifty thousand dollars price by the customer. We conclude that the demurrer was erroneously overruled.

If the general allegations used in the declaration had been interpreted by us as meaning a consummated sale or the procuring of a binding contract of sale, the case would have had to be reversed on account of failure of proof to sustain the declaration as thus construed.

But, contends the defendant in error, the doctrine above set forth does not apply to this case, because the broker here produced to his principal a customer not only ready, able and willing to purchase on the terms fixed and agreed to by the principal, but ready either to enter into a binding contract to that effect, or to consummate the verbal agreement of purchase and sale by accepting a proper deed and paying the cash agreed on and giving mortgage on the property for the balance, and that in these circumstances he cannot be deprived of his right to his commission by reason of the transaction failing on account of the fault of the principal in refusing to complete the transaction or to enter into a binding written contract, embodying the terms of the oral agreement of sale. (See in this connection 9 C. J., 623.) ''What more,'' says the defendant in error, ''could the broker do to effect a sale; must he be required to insure that the principal will not change his mind, and

back down, or in any other way refuse to perform his part?'' If we concede for sake of argument, without deciding the point (which the state of the present record would not warrant), that this contention is based upon a proposition legally sound, it would not avail the defendant in error here, because there is no foundation laid therefor in his pleading, and *probata* without *allegata* is not sufficient. In fact, under the declaration in this case, even liberally construed in favor of the plaintiff, evidence in support of such a contention was not relevant or admissible.

Upon the state of the pleadings and evidence, it follows that the motion for a new trial should have been granted.

The judgment of the court below must therefore be reversed, and the cause remanded.

WHITFIELD, P. J., AND TERRELL, STRUM AND BUFORD, J. J., concur.

ELLIS, C. J., concurs in the conclusion.