PIERCE, Judge.
This is an appeal by Harry Abel, d/b/a Harry Abel Company, one of the defendants in the Court below, from a summary final judgment entered against him and in favor of a co-defendant, First Federal Savings and Loan Association of Manatee County, denying defendant Abel’s counterclaim seeking recovery of a real estate commission from his said co-defendant, in a suit orginally brought in the Sarasota County Circuit Court by Orrin D. Pacetti for return of a cash binder theretofore deposited by Pacetti in connection with his contemplated purchase of certain real estate.
The facts, as developed by the pleadings and depositions in the lower Court, are relatively uncomplicated and without substantial dispute. First Federal, through foreclosure, became owner of certain real property in Manatee County, upon which was located a “23 units, office and owner’s apartment” motel known as Dumas Court. In the latter part of 1963, First Federal contacted Abel, a licensed real estate broker in Sarasota, for purpose of listing, and did list, the Dumas Court property for sale with Abel, agreeing to pay a 6% real estate broker’s commission to Abel when he procured a purchaser ready, willing and able to buy the property on terms satisfactory to First Federal. Until the summer of 1964, Abel and his staff applied themselves diligently to said sales project, expending considerable energy and incurring appreciable expense, and in the process submitted three offers to First Federal which were turned down because the proposed purchase price was unsatisfactory.
Thereafter Abel caused Pacetti, a resident of Miami, to become interested in the property, in pursuance of which Pacetti investigated and canvassed the proposed purchase with unusually thorough detail over a period of time, resulting finally in a written contract being reached between the parties on August 26, 1964, for the purchase and sale. By the terms of the contract, First Federal agreed to sell, and Pacetti agreed to buy, the property in question for the full purchase price of $117,-000.00, payable $2,000.00 cash in hand delivered, $8,000.00 payable on closing the deal, and execution of a note and purchase money mortgage for $107,000.00, payable $750.00 per month including interest at 6% per annum. A written supplement appended to the sales contract, insisted upon by First Federal and agreed to by Pacetti, provided: Pacetti agreed to personally endorse the deferred purchase installment note; agreed to install a swimming pool of ample sufficiency to accommodate the motel; agreed to “improve and refurbish the motel in stages convenient to him”; agreed to operate the motel for his own benefit upon a lease from October 15, 1964 to January 15, 1965 upon certain agreed terms; and agreed to finally close out the deal for the formal purchase on January *297 IS, 1965. The contract was signed by Pacetti as the buyer, by First Federal as the seller, and also by Abel as the broker, who receipted for the $2,000.00 cash deposit.
Thereafter, on or about October 15, 1964, Pacetti and First Federal engaged in a quibbling argument over specifics with respect to the swimming pool and lease provisions in the supplement to the contract, whereby First Federal “refused to conclude the said transaction” notwithstanding satisfactory tender by Pacetti of cash security for his obligations thereunder.
Pacetti thereupon filed amended complaint against First Federal for return of his $2,000.00 deposit money and made Abel an additional defendant because the money had been physically turned over to Abel at the time contract was signed.
Abel answered and tendered into the registry of the Court the deposit money of $2,000.00, requesting that the Court order proper disposition thereof. By cross claim against First Federal, Abel alleged the pertinent facts aforesaid and claimed from First Federal a real estate broker’s commission in the amount of $5,000.00 for having procured Pacetti as purchaser upon terms and conditions agreeable to First Federal.
First Federal answered Pacetti’s amended complaint, admitting execution of the sales contract and supplement, but denying any liability for return of the deposit money. By answer to Abel’s cross claim, First Federal denied the requisite aver-ments thereof, and denied liability to Abel for any broker’s commission.
Thereafter various motions for summary judgments were filed by the parties — by Abel against First Federal for recovery of his broker’s fee; by Pacetti for return of his $2,000.00 cash deposit; and by First Federal on Abel’s cross claim for broker’s fee against First Federal.
On May 2, 1966, Circuit Judge Silver-tooth granted Pacetti’s motion and entered summary judgment in his favor, and ordered the Circuit Clerk to pay over to Pacetti the $2,000.00' then on deposit .in the registry of the Court. The Court found that Pacetti was entitled to return to his $2,000.00, that the contract fpr sale of August 26, 1964 was “vague, ambiguous, uncertain and indefinite” as to “the essential terms and conditions” thereof, that there was “no meeting of the minds or mutuality of contract between the parties to said document”, and that the contract did “not constitute a valid, binding or enforcible contract between the parties thereto”. Jurisdiction was expressly reserved for the purpose of determining the rights of Abel on his counterclaim against First Federal for broker’s commission. At the hearing on Pacetti’s motion for summary judgment, both First Federal and Pacetti argued that the contract between them was vague, ambiguous and. indefinite.
Thereafter, the respective motions for summary judgment of Abel and First Federal were heard before Circuit Judge Justice who, on September 6, 1966, entered summary final judgment in favor of First Federal and against Abel. Judge Justice in his order apparently felt he was bound by the findings in Judge Silvertooth’s previous summary judgment in favor of Pacetti and that therefore, “based upon the adjudication” of Judge Silvertooth holding in effect that the terms and conditions of the purchase contract were so vague and ambiguous as to be unenforcible, there was left in the case “no genuine issue of any material fact” as to Abel’s broker’s fee claim against First Federal.
The various motions for summary judgment were each allegedly supported by affidavits or depositions, the net result of which was to produce substantially the factual picture hereinbefore narrated. We reverse the summary judgment of September 6, 1966, denying Abel his broker’s commission.
Judge Silvertooth’s adjudication that the contract of August 26, 1964 did *298 not constitute a valid or enforcible contract as between Pacetti and First Federal did not bind Abel on his cross claim. Reynolds v. Reynolds, Fla.App.1960, 117 So.2d 16; United States Gypsum Co. v. Columbia Cas. Co., 1936, 124 Fla. 633, 169 So. 532; Gray v. Gray, 1926, 91 Fla. 103, 107 So. 261.
Both Pacetti and First Federal until October 15, 1964, considered they had a valid sales contract between them. Pacetti came over from Miami to close the deal and it fell through apparently only because Pacetti and First Federal could not agree as to who would draw the lease agreement and the exact location of the swimming pool. It was only after the deal aborted upon such flimsy basis that both Pacetti and First Federal came around to the sudden conclusion that they had never had a mutually binding contract, a circumstance which the law will not countenance to defeat an innocent broker from receiving his commission which he has rightly earned.
The terms and conditions of the sales contract of August 26, 1964, were seemingly clear, concise, and definite as to the reciprocal rights and obligations of the parties thereto; certainly the contract was not so vague, uncertain or ambiguous that the parties signatory could have reasonably failed to know the essential details of what they were signing. The description of the property involved was clear. The total purchase price was clear. The time and amounts of cash payments were clear. The conditions of the deferred payments were clear. The minor conditions set forth in the addendum or supplementary agreement appended to the original contract were clear and the record fails to disclose any inability on the part of Pacetti to perform.
The law in Florida as to liability for payment of a real estate broker’s commission is well established. In the early case of Wiggins v. Wilson, 1908, 55 Fla. 346, 45 So. 1011, the Supreme Court held as follows:
“A broker employed to sell, as distinguished from a broker employed to find a purchaser, is not entitled to compensation until he effects a sale or procures from his customer a binding contract of purchase. Ormsby v. Graham, 123 Iowa, 202, 98 N.W. 724. On the other hand, a broker employed to find a purchaser must either produce to the owner a customer who is able, ready, and willing to buy on the terms prescribed by the owner, or else take from the customer a binding contract of purchase.” (Emphasis supplied).
In the case of MacGregor v. Hosack, Fla.1952, 58 So.2d 513, the Circuit Court had entered summary judgment denying a broker’s fee, and the Supreme Court upon appeal, in an opinion written by Justice Hobson, used the following language (text 58 So.2d 515):
“It appears to us that the Circuit Judge did not give appropriate consideration to appellant’s contention that he was only employed to procure and produce a purchaser ready, able and willing to purchase appellee’s property. We have ofttimes held that a broker employed to produce a purchaser ready, able and willing to purchase upon the terms delineated by the vendor is entitled to a commission when he, in good faith, fulfills such contract. The broker is not required under this type of contract, absent a specific stipulation that he do so, to procure and produce a formal and binding written agreement for purchase and sale of the subject real property. It is only necessary that the broker procure and produce, in good faith, a purchaser who is ready, able and willing to purchase upon the terms and conditions specified in the contract of employment. As a general rule, if a broker is employed to sell property he fulfills his contract when he either completes the sale, leaving nothing for the owner to do but execute the necessary transfers of the title of the property or procures from his customer a binding written contract of purchase within the terms of his contract of employment. *299 Knowles v. Henderson, 156 Fla. 31, 22 So.2d 384, 169 A.L.R. 600; Waddell v. [J. P.] Holbrook Co., 108 Fla. 332, [146 So. 668] 147 So. 213. See also Hart v. Pierce, 98 Fla. 1087, 125 So. 243; Malever v. Livingston, 95 Fla. 272, 116 So. 15, and cases cited therein.”
In Sheldon v. Okeechobee & N. W. 36th Street Corp., Fla.App.1962, 147 So.2d 14, the 3rd District Court said:
Under a normal brokerage arrangement, a broker’s commission is earned at the time he either procures a purchaser ready, willing and able to buy * * *, or consummates a sale * *
Lindquist v. Burklew, Fla.App.1960, 123 So.2d 261, is a case closely in point, and in the course of the opinion, this 2nd District Court said:
“Where a broker is employed to procure a purchaser who is ready, willing and able to buy at a specified price, he will be entitled to his commission upon the execution of a binding contract of sale by the buyer which is acceptable to the seller. Wiggins v. Wilson, 1908, 55 Fla. 346, 45 So. 1011, McAllister Hotel, Inc. v. Porte, Fla.1957, 98 So.2d 781. For further citations see 5 Fla.Jur., Brokers, p. 64, n. 12.”
Actually, in the instant case, while Abel was employed to procure a purchaser ready, willing and able to buy upon terms and conditions satisfactory to First Federal as the owner, he in fact effected a sale of the property at a price and upon terms agreeable to the owner and procured to be executed a binding written contract of sale. We hold that certainly when Pacetti signed the contract to buy, and First Federal signed the contract to sell, and the contract in reasonably clear, understandable and unambiguous language embodied all the requisite terms and conditions of the sale, Abel, as the procuring broker who had brought the transaction to such state of fruition, was entitled to the previously agreed-upon brokerage fee which he had rightfully and legally earned.
Accordingly, the summary final judgment entered on September 6, 1966, is reversed and the cause remanded with directions that judgment be entered in favor of Abel in accordance with the views hereinbefore expressed.
Reversed and remanded.
ALLEN, C. J., and OVERTON, BEN F., Associate Judge, concur.