**M. M. MATTHEWS, Plaintiff-Appellee-Cross Appellant,**

**v.**

**DREW CHEMICAL CORPORATION, Defendant-Appellant-Cross Appellee.**

**No. 72–1838.**

United States Court of Appeals, Fifth Circuit.

March 9, 1973.

As Modified on Denial of Rehearing and Rehearing En Banc
April 24, 1973.

William A. Gillen, Tampa, Fla., for appellant.

W. H. Faulk, Jr., David A. Maney, Tampa, Fla., Jack W. Floyd, Greensboro, N. C., for appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

This is a diversity action that was brought by appellee, M. M. Matthews, to redress the allegedly wrongful termination on June 25, 1968 of his employment with appellant, Drew Chemical Corporation.[1] Drew Chemical sought to justify its having fired Matthews by showing that on May 10, 1968, he had signed a contractual "memorandum of employment" that in either of two alternative ways prevented him from prevailing.[2] First, the contract was alleged to have given both parties the right to terminate employment by merely giving notice to the other party.[3] Secondly, Drew Chemical insisted that the contract required Matthews to submit work reports "as required," [4] that Matthews explicitly refused to obey a direct order to submit his reports to a named district manager,[5] and that therefore it was Matthews who breached the employment contract, not Drew Chemical.[6]

---

1. In addition to the diversity claim, Matthews also alleged a cause of action under the Federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. A jury verdict adverse to Matthews was returned on that portion of the suit, however, and he has not appealed from that part of the judgment.

2. In the years immediately preceding Matthews' dismissal, several such documents were signed. Each is labelled "MEMO OF EMPLOYMENT AGREEMENT" and sets forth miscellaneous features of the relationship between the parties including, *inter alia*, specifically captioned terms regarding the following: remuneration, bonus, expenses, duties, territory, equipment, reports, and termination of employment. The terms with which we are here concerned remained essentially the same during the years in question.

3. The document provided as follows:
"Employment may be terminated at any time by either party to this Agreement giving notice to the other party."

4. The document provided as follows:
"Employee agrees to furnish Company with daily reports covering his work; a weekly recap sheet; and other routine reports as required."

5. Matthews admits that he so refused to comply. Indeed, on May 25, 1968, Matthews advised Drew Chemical by letter that he considered the order directing him to send the reports and other paperwork to the new district manager to be improper, *see* note 9 *infra*, and added:
". . . I will not work for or under [the new district manager] at any time. . . . I do hope that you will not terminate me, but I cannot work for or under [him]. I feel very strong on this point. I will just have to be terminated if this point is forced, for I have come to a point of no return on this now . . . ."

6. The dispute regarding where Matthews should submit his work reports had precipitated a series of letters to and from the company. In response to the letter partially reproduced in note 5, *supra*,

At the trial below Matthews did not dispute the existence of the written "memorandum of employment." Rather, he based his breach of contract claim on additional *oral* agreements that were allegedly entered into during February of 1966, well before the writing was signed, and that allegedly remained in effect at all times thereafter. Despite Drew Chemical's insistence that an express integration clause contained in the written agreement [7] barred the introduction of parol evidence regarding the terms and conditions of Matthews' employment, such evidence was admitted. Testimony was received that indicated (1) the written termination clause had a previously agreed upon, oral, "for cause" requirement appended to it,[8] and (2) the clause requiring Matthews to report "as required" had a similar prior appendage, an oral agreement that Matthews could always submit his reports to a certain company executive.[9]

Although the usual pre-trial procedures were followed in the court below, neither party saw fit to advise the court of the impending and clearly foreseeable problem regarding the admission of parol evidence in the face of a written document. When the evidence was offered, the trial judge was thus forced to interrupt the trial, send the jury from the courtroom, hear argument, and then rule from the bench on the admissibility of the parol evidence. Matthews' brief on appeal characterizes the trial judge's ruling and the subsequent trial action as follows:

"Having determined that the writing, with respect to the intent of the parties, was equivocal, the trial court permitted oral testimony to determine what was that intent. The trial court then correctly determined that it was not the intent of the parties to embody their entire agreement in that writing. Having determined that it was not the intent of the parties to embody the entire agreement in the writing · . . . the trial court submitted to the jury the responsibility of determining what was the agreement of the parties, taking into consideration not only the writing but also the testimony of the parties, as to the nature and extent of the agreement. The jury found for Matthews. . . ."

Each party raises several issues on this appeal, but we need reach only one. If notwithstanding any prior oral agreements the written termination clause gave Drew Chemical the power to terminate Matthews' employment as it did, then as a matter of law Matthews cannot prevail on his breach of contract claim. We hold that on the facts of this case the written termination clause must control and that Drew Chemical is therefore entitled to judgment in its favor.

We begin our analysis by recognizing that even though a writing declares on its face that it is "integrated," circumstances may well exist that justify receiving parol evidence to determine what the parties intended the document

---

Drew Chemical advised Matthews that if he did not retract the letter within one week, the company would consider it his resignation and would arrange for an immediate severance. Matthews chose not to comply and Drew Chemical advised him that it was terminating his employment.

7. The document provided as follows:
"This Agreement supersedes any prior existing Agreement or understanding, and it will be reviewed annually."

8. Matthews testified that in February of 1966 he was orally promised that he could remain with Drew Chemical until

retirement age "so long as he did not give Drew cause for his discharge."

9. Matthews testified that in February of 1966 he was orally promised that he would always have a special reporting privilege. The dispute arose when the company ordered Matthews to submit his reports to the man who had replaced him as district manager, a man whom Matthews had hired and trained. Matthews refused to submit his reports to the new manager and chose instead to stand on his assertion that the company had specifically promised him that he could always submit his reports to a different person.

to be or mean. Regarding partial integrations, for example, the law is clear:

> "The parol evidence rule does not preclude the introduction of evidence showing a prior or contemporaneous agreement if the writing, or writings, constitute only a partial integration of the agreement between the parties. That is, if the writings are but a partial integration of the agreement, the rest of the agreement, or collateral agreements, may be shown through parol.
>
> "It follows, therefore, that where the issue is fairly raised by the evidence, the court must preliminarily and initially determine whether the writings in question were intended to, and do, constitute a complete integration of the agreement between the parties. For the purpose of making that preliminary determination, the parol evidence rule is inapplicable. . . ."

Walley v. Bay Petroleum Corp., 5 Cir. 1963, 312 F.2d 540, 543–544. *See also* South Florida Lumber Mills v. Breuchard, 5 Cir. 1931, 51 F.2d 490.[10]

■ As a general proposition, then, there can be no error in a trial judge's allowing parol testimony into evidence in the first instance. *See, e. g.*, Ivy H. Smith Co. v. Moretrench Corp., 5 Cir. 1958, 253 F.2d 688 (writing itself stated that it "contains all of the agreement"). Thus, we cannot say that it was improper for the judge below to have *heard* parol evidence regarding the intent of the parties as to whether this document was to be a total integration of Matthews' employment contract. But the matter cannot be put to rest by making that determination. The real issue in these cases is whether the parol evidence could permissibly be used during the trial in the manner in which it was employed. Here, Matthews was allowed to convince the jury that, in light of their prior oral agreement, when the parties wrote "Employment may be terminated at any time by either party to this Agreement giving notice to the other party," they were really agreeing that "Employment may be terminated at any time by either party to this agreement giving notice to the other party, *but employer shall have the power to exercise this right to terminate only if he can show good cause for terminating employee's employment.*" We find that it was error to allow the parol evidence to be put to this use.

■ The parol evidence rule is a matter of substantive law,[11] and it clearly prohibits the *use* of prior or contemporaneous agreements to alter the terms of or add *inconsistent* provisions to a written contract:

> "Undoubtedly, the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol, if, under the circumstances of the particular case, it may properly be inferred that the parties did not intend the written paper to be a complete and final statement of the whole of the transaction between them. But such an agreement must not only be collateral, but must relate to a subject distinct from that to which the written contract applies; that is, it must not be so closely connected with the principal transaction as to form part and parcel of it. And when the writing itself upon its face is couched in such terms as import a complete legal obligation, without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that

---

10. The commentators agree that parol evidence problems should be viewed as having these two separate steps. *E. g.*, IX Wigmore on Evidence §§ 2430, 2431; Simpson on Contracts § 65; 4 Williston on Contracts §§ 609, 618, 629, 633. *See also* Restatement of Contracts § 238(a).

11. IX Wigmore on Evidence § 2400. *See also* Restatement of Contracts § 237, Comment a.

the whole engagement of the parties [as to that event], and the extent and manner of their undertaking, was reduced to writing."

Seitz v. Brewers' Refrigerating Machine Co., 1891, 141 U.S. 510, 517, 12 S.Ct. 46, 47, 35 L.Ed. 837, 840; Squires v. Kilgore, 1926, 92 Fla. 1001, 111 So. 113; Waters v. Southern Asphalt & Constr. Co., 1914, 67 Fla. 440, 65 So. 457; McNair & Wade Land Co. v. Adams, 1907, 54 Fla. 550, 45 So. 492. *See also* Asphalt Paving, Inc. v. Ulery, Fla.App. 1963, 149 So.2d 370.

■ The Supreme Court's decision in Seitz v. Brewers' Refrigerating Machine Co., *supra,* makes clear that parol evidence cannot be used to vary one of the written terms of a partially integrated document where the particular term is "complete and perfect on its face, without ambiguity . . ." 141 U.S. at 517, 12 S.Ct. at 48, 35 L.Ed. at 840. We hold that on the facts of this case, the written contract, be it characterized as a total or only a partial integration, unambiguously defined the sole borders of Drew Chemical's contractual power to terminate Matthews' employment. Even where parol evidence has been admitted to show some general or specific intent, that evidence may not be used to change the meaning of whatever unambiguous terms do appear in the writing.

■ The written contract answers the question "How may either party terminate this relationship?" by unequivocally saying "By giving notice." No mention or intimation of additional requirements is made, and it can hardly be said to be consistent with that "answer" to add *"and* by proving that good cause exists." As Florida states its rule:

"The chief and most satisfactory index to determine the intent of the parties to an agreement as to whether they intended their written contract to be a complete and final statement of the whole transaction is whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element."

Greenwald v. Food Fair Stores Corp., Fla.App.1958, 100 So.2d 200, 202.

If a contract provides in writing for a term of "Ten years from date" but is silent as to salary, the salary could be supplied by parol—but the term for which the salary is to be paid could not be shown to be something inconsistent with the ten years. The conditions of termination are here unambiguously written, without allegations of duress, uninduced by fraud, and not with omissions due to mistake. Although under certain conditions parol evidence may be used to supplement a partially written but unintegrated contract, such testimony cannot disintegrate the unimpeachable portions of the written partial integration. An unintegrated written contract having a positive element or term cannot be negatived by parol proof of a contradictory and inconsistent positive that was existent before the writing was signed. The case is reversed and remanded for further proceedings not inconsistent with this opinion.[12]

Reversed and remanded.

12. It appears that Matthews' suit also included a claim for commissions earned prior to his termination, which, if meritorious, could justify a recovery notwithstanding our holding here.