436 So.2d 983 (1983)
HARDING REALTY, INC., a Florida Corporation, Appellant,
v.
TURNBERRY TOWERS CORPORATION, a Florida Corporation, Appellee.
No. 82-2410.
District Court of Appeal of Florida, Third District.
August 2, 1983.
Rehearing Denied September 21, 1983.
Feldman, Abramson, Smith, Magidson & Levy and Louis A. Supraski, Miami, Claudia B. Greenberg, Coral Gables, for appellant.
Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin and Joel S. Perwin, Miami, for appellee.
Before HENDRY, NESBITT and BASKIN, JJ.
NESBITT, Judge.
Harding Realty, Inc. (Harding) appeals a final summary judgment entered in favor of Turnberry Towers Corporation (Turnberry) in Harding's suit for brokerage commission. Based on the undisputed facts and applicable law, we affirm.
Pursuant to written brokerage agreements, Harding procured two corporations as prospective purchasers for two units at Turnberry's condominium development. The corporations executed binding contracts of purchase and sale with Turnberry and advanced earnest money deposits, but never closed. As a result of the purchaser defaults and in accordance with provisions *984 in the purchase and sale agreements, Turnberry retained the full amount of both deposits despite Harding's demand for a portion of the same. Harding's suit followed.
The operative language of the brokerage agreements provided "that Harding Realty, Inc. shall be entitled to a commission of 3%, at time of closing, on the sale of [the units] to ... clients brought by [Harding's] salesmen." We construe this language as fixing an arrangement whereby Harding was employed to effect a sale, rather than simply to obtain a ready, willing, and able buyer. See MacGregor v. Hosack, 58 So.2d 513, 515 (Fla. 1952); Hart v. Pierce, 98 Fla. 1087, 125 So. 243, 246 (1929); Malever v. Livingston, 95 Fla. 272, 116 So. 15, 17 (1928). The execution of a contract of purchase and sale does not, of itself, constitute a sale. Lazer, N.V. v. Hollo, 432 So.2d 102 (Fla. 3d DCA 1983). However, when a broker is employed "to effect a sale," he is entitled to payment of his commission either upon completing the sale or upon presenting the seller with a binding, enforceable, written contract of purchase and sale, MacGregor v. Hosack, supra; Hart v. Pierce, supra; Malever v. Livingston, supra, and it is of no moment under the latter circumstance that the purchaser procured by the broker defaults, Acheson v. Smiths, Inc., 110 Fla. 240, 148 So. 576 (1933). Of like insignificance is the fact that, as here, the purchase and sale contract may not be specifically enforceable in equity because its liquidated damages clause (forfeiture of deposit upon default) provides an adequate remedy at law. Acheson v. Smiths, Inc., supra.
We recognize though that the general rule stated above with regard to entitlement to a commission under "effect-a-sale" brokerage contracts may be varied by express terminology rendering payment subject to some condition. See 12 Am.Jur.2d Brokers § 195 (1964); cf. Hanover Realty Corp. v. Codomo, 95 So.2d 420 (Fla. 1957) (broker's express agreement that execution of leases would be condition precedent to his right to commission prevented application of general rule that broker is entitled to commission if transaction is not consummated solely due to arbitrary refusal on the part of his principal); Warter v. Bancroft Hotel Associates, 285 So.2d 676 (Fla. 3d DCA 1973) (where real estate broker's letters to president of hotel corporation and corporation's attorney stated that commission on sale of hotel was expected only if transaction was fully consummated, broker's production of customer ready, willing, and able to purchase hotel at fixed and agreed price did not entitle broker to commission even though corporation backed out merely to obtain a better price). Turnberry argues that the words "entitled to a commission ... at time of closing" present such an express condition precedent. We agree.
Although there are some cases to the contrary, e.g., Pearson v. Crummer, 97 Cal. App. 707, 276 P. 153 (1929); Collopy v. Stevenson, 125 Kan. 703, 265 P. 1098 (1928); Hatch v. Dayton, 130 N.J.L. 425, 33 A.2d 350 (1943), the great weight of authority holds that contractual provisions for payment of a brokerage commission at the time of sale, closing, or settlement render such occurrence a condition precedent to the obligation of payment. Hamrick v. Cooper River Lumber Co., 223 S.C. 119, 74 S.E.2d 575 (1953) (and cases cited therein); O'Boyle v. Dubose-Killeen Properties, Inc., 430 S.W.2d 273 (Tex.Civ.App. 1968) (and cases cited therein); see also Mark Realty, Inc. v. Rogness, 418 So.2d 373, 376 (Fla. 5th DCA 1982) (dicta); 3A A. Corbin, Corbin on Contracts § 639 (1951); Annot., 74 A.L.R.2d 437 (1960). This principle applies a fortiori in the present case where the commission agreement, drafted by the broker, expresses that entitlement to the commission, as opposed to just payment of the commission, is to occur at closing. Since it is uncontroverted that the subject closings never took place, Harding's recovery is precluded as a matter of law by the terms of its express contract with Turnberry.
Harding's complaint also sought recovery on the theory of quantum meruit. However, the law will not imply a contract where a valid express contract exists. Hazen v. Cobb, 96 Fla. 151, 117 So. 853 (Fla. *985 1928); Solutec Corp. v. Young & Lawrence Associates, Inc., 243 So.2d 605 (Fla. 4th DCA 1971); see Bloom v. Frese, 123 So.2d 47 (Fla. 3d DCA 1960). Consequently, the trial court properly entered summary final judgment as to Harding's entire action.
Affirmed.