774 So.2d 881 (2001)
Thomas SCOTT, III, Appellant/Cross-Appellee,
v.
Mason SIMPSON a/k/a R. Mason Simpson, Claridge Realty, Inc. d/b/a Cliveden Realty, Inc. a/k/a Cliveden Realty, Appellees/Cross-Appellants.
No. 4D98-4101.
District Court of Appeal of Florida, Fourth District.
January 3, 2001.
William L. Roby of Crary, Buchanan, Bowdish, Bovie, Roby, Beres, Negron & Thomas, Chartered, Stuart, for appellant/cross-appellee.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A. and Ronald E. Jones of Ronald E. Jones, P.A., West Palm Beach, for appellees/cross-appellants.
*882 SHAHOOD, J.
Appellant, Thomas Scott, III (Scott) is a real estate salesman who filed a breach of contract action against, appellees, Claridge Realty, Inc., d/b/a Cliveden Realty, Inc., a/k/a Cliveden Realty (Claridge), and Claridge's president and qualifying broker, Mason Simpson (Simpson). Scott alleged that Simpson and Claridge breached a real estate brokerage agreement and owed him commissions for procuring numerous purchasers for the Cliveden of Jupiter Islands project.
The proceedings were bifurcated, with the first stage addressing the issue of the validity of the agreement, and the second stage centering on whether there was a breach. In the first stage, the trial court determined that the contract was valid and enforceable; that order was not appealed. Following a two-day, non-jury trial in the second phase, the trial judge entered judgment in favor of Scott, against Claridge, and awarded Scott $82,574.64, including actual damages and prejudgment interest. The court ruled in favor of Simpson on the issue of whether he was personally liable on the contract. Scott filed an appeal of that portion of the order not finding Simpson individually liable. Claridge filed a cross-appeal.
We affirm as to all issues raised by appellant on appeal. As to the issue raised on cross-appeal, we hold that the trial court misinterpreted the language of the contract, and reverse with directions that the trial court enter judgment in favor of appellee, Claridge. This opinion addresses the issue raised on cross-appeal.
In 1993 and 1994, Claridge of Jupiter Island developed Claridge, a condominium project on Jupiter Island, and contracted with Claridge Realty to sell the units. In 1994, Simpson incorporated Jupiter Island Corporation to develop Cliveden, another condominium project on Jupiter Island. He used Claridge Realty under the trade name of Cliveden Realty to act as Cliveden's sales agent.
In April 1994, Simpson met Scott, and the two made an oral agreement that Scott would be paid commissions for procuring sales of certain property. Scott was hired to replace another sales agent who had been selling Cliveden and Claridge units. Pursuant to the agreement, Scott was to receive .25% of the purchase price on the former agent's pending contracts if he closed those contracts. On Cliveden sales, Scott was to receive a 1½% split commission, with .75% payable when the contracts came out of recission, and .75% payable when the contracts closed, assuming Scott was still working for Simpson at closing. Scott also earned commissions on the sales which his predecessor had made, but which actually closed after she was terminated.
A Purchase Contract Summary Sheet which was admitted into evidence showed that Scott had procured buyers and obtained contracts on 18 of the 20 units in the Cliveden development. He received 50% of the commissions on the 18 contracts, and claimed that he was still owed the other half of the commissions. It was Scott's impression that he was responsible for tying up the loose ends on the Claridge contracts, but, with the Cliveden project, his only responsibility was to procure a contract and then have no further contact with the buyers.
In July 1994, Simpson presented Scott with an agreement titled "Cliveden Realty, Inc. Independent Contractor Agreement Between Broker and Salesman." Both parties signed the agreement without further negotiations. The agreement contained the following provisions which are relevant to this discussion:
V. BROKER shall negotiate all terms and conditions of fees charged clients including but not limited to, the amount of the fee and dates such fees become due. Where SALESMAN performs any services described in this Agreement and a fee is earned and collected by BROKER, SALESMAN shall receive.75% of the selling price when the contract comes out of rescission and .75% *883 when the purchase is closed; and BROKER shall receive the balance, ....
. . . .
X. This Agreement shall continue until terminated.... BROKER may terminate this Agreement without notice for wrongful conduct by SALESMAN.... SALESMAN acknowledges that all pending sales and listings taken during the term of this Agreement are the property of BROKER. SALESMAN further acknowledges that commissions are earned and accrue to SALESMAN upon the actual closing of a transaction and that SALESMAN forfeits all entitlement to any pending commissions upon the termination of this Agreement. ...
(emphasis added). The agreement pertained only to Cliveden sales.
On September 15, 1995, Scott received a letter from Simpson, as president of Cliveden Realty, Inc., stating that Scott's employment was being terminated. Scott was fired for lack of enthusiasm for selling, failure to act on specific sales requests, and lack of commitment to the responsibilities of his position. The letter reminded Scott that,
In the Agreement, you acknowledged that commissions are earned by and accrue to you upon the actual closing of a transaction, and that you forfeit all rights to any pending commission once the Agreement is terminated. The purpose of this mutually agreed upon provision is that a salesman must perform much work after a contract is signed, and even after the recission period has passed.... Therefore, the salesman who undertakes those post contract signing responsibilities is entitled to be compensated with a portion of the commission.
Scott nevertheless demanded that Simpson pay commission on the Cliveden contracts that Scott had procured, but which had not yet closed. Simpson refused, and this suit was instituted.
Interpretation of a written contract is a matter of law, DEC Elec. Inc., v. Raphael Constr. Corp., 558 So.2d 427 (Fla. 1990); therefore, the trial court's ruling may be reviewed de novo. Leseke v. Nutaro, 567 So.2d 949 (Fla. 4th DCA 1990); see also Fla. Bd. of Regents v. Mycon Corp., 651 So.2d 149 (Fla. 1st DCA 1995); Hartford Ins. Co. of the Midwest v. Atkinson, 623 So.2d 549 (Fla. 2d DCA 1993). Our review of the agreement between Scott and Simpson, on behalf of Claridge, leads us to conclude that the trial court erred in awarding commissions to Scott based on sales which he procured, but which had not yet closed when the agreement was terminated.
The trial court found that the agreement applied only to sales of Cliveden and not Claridge, and that at the time Scott was terminated, the Cliveden project was 90% sold. Therefore, concluded the trial court, Scott had performed under the contract and was entitled to commission. On that basis, the court then calculated Scott's commission award after first deducting.25% for the efforts which were or would be expended by successor sales persons in closing Scott's sales.
In making its ruling, the trial court did not refer to any provisions in the agreement or otherwise explain why Scott was awarded commission in spite of the clear and unambiguous language in the contract stating that "SALESMAN further acknowledges that commissions are earned and accrue to SALESMAN upon the actual closing of a transaction and that SALESMAN forfeits all entitlement to any pending commissions upon the termination of this Agreement." Agreements entitling sales persons to commissions only after the sales have actually closed are standard in this business, and have been upheld by this and other courts. See generally Farrar v. Investors Realty Servs. Inc., 448 So.2d 1182 (Fla. 4th DCA), review denied, 458 So.2d 272 (Fla.1984); Pointe Sav. Bank v. Garshall, 610 So.2d 705 (Fla. 4th DCA 1992); Harding Realty, Inc. v. Turnberry *884 Towers Corp., 436 So.2d 983 (Fla. 3d DCA 1983)(provision that salesman "effect a sale" means that closing is a condition precedent to the payment of commissions). Thus, it was error for the trial court to award commissions on un-closed sales. Scott's argument that he is entitled to commissions on a quantum meruit ground is incorrect because there is a valid express contract. Id. at 984.
Accordingly, we reverse and remand with directions that the trial court enter judgment in favor of Claridge.
AFFIRMED AS TO APPEAL; REVERSED AND REMANDED WITH DIRECTIONS AS TO CROSS-APPEAL.
WARNER, C.J., and HAZOURI, JJ., concur.