BOATRIGHT *v.* HORTON, et ux.

No. 40054 April 23, 1956 86 So. 2d 864

*Cooper & Harper,* Indianola, for appellant.

*Kellner & Kellner,* Greenville, for appellees.

HOLMES, J.

The appellees, L. D. Horton and his wife, Mrs. L. D. Horton, brought this suit against the appellant, Jewel Boatright, to recover of the appellant an alleged indebtedness, and to subject to the payment thereof by attachment in chancery the undivided one-half interest of the appellant in certain lands described in the original bill comprising 487 acres, more or less, in Washington County, Mississippi.

The original bill alleged that the appellant was a nonresident of the State of Mississippi; that she owned an undivided one-half interest in the aforesaid lands, subject to a lien thereon in favor of the Connecticut General Life Insurance Company, evidenced by a deed of trust dated March 20, 1952; that the appellant was indebted to the appellees in the principal sum of $5,000, together with interest and attorneys' fees, being one-half of five promissory notes executed by the appellant and her hus-

band, O. R. Horton, to the appellees dated December 15, 1948, each for the principal sum of $2,000, maturing respectively on November 1st of each of the years 1954 to 1958 inclusive. It was alleged in the bill that all of said notes had been declared due and payable because of the default in the payment of the note due November 1, 1954. The bill prayed the subjection by attachment of the appellant's interest in the aforesaid lands to the payment of the indebtedness alleged to be owing. There was exhibited to the bill copies of the five promissory notes above referred to.

The appellant answered, admitting that she was the owner of an undivided one-half interest in the lands mentioned, subject to a lien or deed of trust thereon in favor of Connecticut General Life Insurance Company. She denied that she was indebted to the appellees, and averred that the alleged indebtedness had been paid and that the appellees had acknowledged payment thereof by an instrument of writing authorizing the chancery clerk to cancel of record the implied vendor's lien purporting to secure the notes sued on, and contained in the deed whereby she acquired her interest in the lands described. She further averred that in no event were the appellees entitled to accelerate the due date of the notes sued on.

After a full hearing, the chancellor denied to the appellees the right to accelerate the due dates of the notes, and awarded to them recovery on the note due November 1, 1954 and ordered appellant's interest in the land sold to satisfy the amount awarded in the decree. From this decree, the appellant has prosecuted this appeal. The appellees have cross-appealed, complaining that the chancellor erred in denying to them the right to accelerate the due dates of the notes and recover on all of them.

The evidence discloses the following: The appellees are the parents of O. R. Horton. The appellant is the former wife of O. R. Horton. Since the happening of the events leading up to this controversy, the appellant and

O. R. Horton have been divorced. On December 15, 1948, the appellees conveyed by warranty deed to the appellant and her husband, O. R. Horton, the full title to the entire tract of land hereinbefore referred to as containing 487 acres. The consideration recited in the deed was $20,000 evidenced by 10 promissory notes in the principal amount of $2,000 each, due respectively on the 1st day of November of each of the years 1949 to 1958 inclusive. On the same date, December 15, 1948, the appellant and her husband executed a deed of trust to the appellees on said lands securing the said notes. The deed of trust contained the following clause: "Should default be made in the payment of any one of the notes secured hereby or any interest due thereon on November 1 of each year, then the beneficiary herein named, at his, her or its option, may declare all of said notes due and payable and if not then paid, may direct a foreclosure as herein provided."

The aforesaid deed of trust was never placed of record. At the time of the conveyance of the land to appellant and her husband, it was subject to a deed of trust then of record in favor of the Connecticut General Life Insurance Company. In the early part of March 1952, O. R. Horton became in financial difficulties. He testified that he had experienced two or three bad crop years and was in need of funds and desired to get an additional loan from the Connecticut General Life Insurance Company. In order to do this, it was necessary that there be released of record the implied vendor's lien in the aforesaid deed to him and his wife from the appellees. According to the testimony of O. R. Horton, he, in company with his wife, went to his father and advised him of the situation. O. R. Horton further testified that he and his wife then agreed with L. D. Horton that the release would be executed and that he and his wife would pay the outstanding notes. L. D. Horton corroborated this testimony of O. R. Horton. The appellant denied that

she agreed to pay the notes. According to the testimony of L. D. Horton and O. R. Horton, the first five notes had been paid. The release was duly executed and placed of record and the additional loan was consummated with the Connecticut General Life Insurance Company. The release was dated March 21, 1952, and authorized the chancery clerk to cancel of record the implied vendor's lien and recited that the indebtedness secured thereby had been paid in full. This recitation, according to the testimony of L. D. Horton and O. R. Horton, was not true. The release further, while representing that a deed of trust to secure the notes had never been executed, discharged and conveyed to O. R. Horton and the appellant any interest which the grantors in the release might have in any deed of trust whether executed or unexecuted, recorded or unrecorded.

Ernest Kellner, Jr., testified that he represented the appellant and her then husband in obtaining the additional loan from the Connecticut General Life Insurance Company; that he and the appellant and her then husband went to the office of Mr. Tindall of the law firm of Wynn, Hafter, Lake and Tindall, to confer with him relative to the matter; that the form of release executed was required by Mr. Tindall, who was representing the insurance company. The appellant denied that she accompanied her then husband and Mr. Kellner to the office of Mr. Tindall, nevertheless, the deed of trust to secure the new loan appears executed by both the appellant and her then husband and acknowledged before a notary in the office of Wynn, Hafter, Lake and Tindall. Mr. Kellner further testified that he did not recall whether or not the appellant specifically told him that she owed the money evidenced by the notes to L. D. Horton and his wife, but that from the general conversation with the appellant and her then husband, it was understood that they did owe the money on the purchase price of the land.

The appellant admitted the execution of the notes and testified that nothing had been paid thereon. She further testified that the notes were never intended as legal obligations and that it was never intended that the notes should be paid, but that the conveyance of the land to her and her husband was in fact a gift, and was in pursuance of a scheme of L. D. Horton to make gifts of land to his five children to evade what she understood to be inheritance taxes. While the appellant testified that the notes were never intended as legal obligations to be paid, she admitted she was claiming her interest in the land under the deed which recited the purchase price of $20,000 as evidenced by the aforesaid notes.

Mrs. Cassel Pittman, a sister of the appellant, testified that she had heard L. D. Horton say that he had given all of his children land, and that he had given "Jewel and O. R. all of this land, and that they had the best chance of anybody."

O. R. Horton testified that his father and given him 40 acres of land where his home place was. This is no part of the land in suit.

Both L. D. Horton and O. R. Horton denied that the conveyance of the land in suit was a gift, and testified on the contrary that the conveyance was a sale of the land and that the notes executed therefor were legal obligations to be paid according to their terms. It appears from the testimony of both L. D. Horton and O. R. Horton that the release was executed as an accommodation to the son and his wife for the sole purpose of enabling his son to increase his loan from the Connecticut General Life Insurance Company, and that appellees were induced to execute the release by the promise of his son and his wife to pay the remaining unpaid notes. It is admitted by all parties that nothing was paid to the appellees for the release.

The chancellor found from the conflicting evidence that the notes were subsisting obligations of the appel-

lant and O. R. Horton, that there was no consideration for the release, that the release did not constitute a renunciation of the indebtedness, and that the appellees were without right to accelerate the due dates of the notes. We think the finding of the chancellor is supported by substantial evidence, and we are certainly not warranted in saying that the chancellor was manifestly wrong.

It is contended by the appellant, however, that the release constituted a renunciation of the indebtedness. This is refuted by the testimony of L. D. Horton and O. R. Horton, which testimony the chancellor manifestly deemed to be true, to the effect that the release was obtained upon the express promise of the appellant and her husband to pay the outstanding notes. It appears from this testimony, therefore, that there was no intention on the part of the parties that the release was to constitute a renunciation of the indebtedness, but on the contrary, under the express agreement of the parties, the indebtedness was to continue in effect as a binding obligation of appellant and her husband.

It is further urged by the appellant that the written release, including the recital therein that the indebtedness had been paid, was binding upon the appellees, and that the provisions thereof can not be varied by parol evidence. We are unable to agree with this contention. According to the testimony of L. D. Horton and O. R. Horton, which the chancellor was warranted in believing, the release was executed as an accommodation to the son and his wife and its execution was induced by the promise of the son and wife to pay the outstanding notes. In 32 C.J.S., Evidence, Section 970, page 933, it is said, as follows:

"It has been held that where the execution of a written instrument has been induced by an oral stipulation or agreement made at the time, on the faith of which the party executed the writing and without which he

would not have executed it, but such agreement or stipulation is omitted from the writing, even if its omission is not due to fraud or mistake, evidence of the oral agreement or stipulation may be given, although it may have the effect of varying the contract or obligation evidenced by the writing, where there has been an attempt to make a fraudulent use of the instrument in violation of such promise or agreement, or where the circumstances would make the use of the writing for any purpose inconsistent with such agreement dishonest or fraudulent.''

We think it was competent, therefore, for the appellees to show the contemporaneous oral agreement, on the faith of which the release was executed.

 There is further reason, however, why this contention of the appellant is, in our opinion, untenable. The acknowledgment in the release of the payment of purchase money is merely a receipt and is subject to contradiction by parol evidence. In the case of Allen, et al v. Allen, et al, 185 Miss. 735, 168 So. 658, the Court said: ''An acknowledgment of the payment of the purchase price is merely a receipt and is subject to parol contradiction.'' In the case of Fowlkes v. Lea, 84 Miss. 509, 26 So. 1036, the Court held: ''An acknowledgment of the payment of the purchase money contained in a deed is but a receipt and may be contradicted by parol evidence.'' To the same effect is the case of Baum v. Lynn, 72 Miss. 932, 18 So. 428.

We are accordingly of the opinion that the decree of the court below should be affirmed on direct appeal.

 It is contended by the appellees on cross-appeal that the court erred in denying to the appellees the right to accelerate the due dates of the notes. We think the chancellor was not in error in this conclusion. It should be borne in mind that this is not a suit to foreclose the deed of trust, but is a suit to recover on the notes and to subject by attachment in chancery the appellant's interest in the land to the payment of the indebtedness.

The authorities are in conflict as to whether an acceleration clause in the mortgage only and not in the notes, will, on the specified default, render the indebtedness due for purposes of suit on the notes as well as for the purpose of foreclosing the mortgage. 10 C.J.S., Bills and Notes, Section 251(b). We are not called upon in this case, however, to determine which of the conflicting views we should adopt. We think the language of the clause in the deed of trust before us is determinative of the question. Of course, provisions for acceleration are matters of contract between the parties. The parties may by agreement relate the right of acceleration to all purposes or to purposes of foreclosure only. In 8 Am. Jur., Bills and Notes, page 32, it is said: "Of course, the acceleration provision may relate merely to the security and provide only for its sale upon default, in which event it is held not to affect the note."

██ █ The clause in the deed of trust provides that should default be made in the payment of any one or more of the notes secured, the beneficiary may, at his, or her, or its option, declare all of said notes due and payable, "and if not then paid may direct a foreclosure as herein provided." Under this language, the beneficiary in the deed of trust was authorized to declare all of the notes due on default in the payment of any one of them. Nevertheless, it was further provided that if such was done and the notes were not then paid, the beneficiary might direct a foreclosure. This language, in our opinion, is susceptible of the interpretation that if the beneficiary exercised his option to declare all of the notes due, the debtor could then pay the full indebtedness with interest only to date of payment, but if he then failed to do so, the beneficiary had the right to foreclose for the full amount of the indebtedness. We think this language limited the right of acceleration to purposes of foreclosure only. It is a recognized principle that a contract to accelerate the maturity of a debt

gives a harsh remedy, and that in order to be effective, it should be clear and unequivocal, and that if there is a reasonable doubt as to the meaning of the language employed, preference should be given to that construction which will prevent the acceleration of maturity. In 10 C.J.S., Bills and Notes, Section 251, page 748, it is said:

"An acceleration clause is to be construed as any other provision in a contract, and is to be governed by the usual rules applicable to the construction of contracts. It has been held, however, that a contract to accelerate the maturity of a debt gives a remedy that is harsh in its nature, and provision therefor, in order to be effective, should be clear and unequivocal; and, if there is a reasonable doubt as to the meaning of the terms employed, preference should be given to that construction which will avoid the forfeiture and prevent acceleration of maturity."

Certainly it can not be said that the language of the clause in question means beyond a reasonable doubt that the right of acceleration was accorded for all purposes and not for purposes of foreclosure only. We, therefore, do not feel warranted in reversing the chancellor in his decision that the right of acceleration did not exist for purposes of suit on the notes.

Affirmed on both direct and cross-appeal.

*Roberds, P.J.,* and *Hall, Lee* and *Kyle, JJ.,* concur.