Pettis WALLEY, Appellant,

v.

The BAY PETROLEUM CORPORATION, Appellee.

No. 19858.

United States Court of Appeals
Fifth Circuit.

Jan. 23, 1963.

Francis T. Zachary, Jack B. Weldy, Hattiesburg, Miss., for appellant.

Frank J. Cope, Houston, Tex., for appellee.

Before HUTCHESON, WISDOM and GEWIN, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellee recovered judgment against appellant for $96,321.19, with interest and attorneys' fees. Of that principal amount, $40,893.19 represented the amounts still due on two so-called promissory notes, while $55,428.00 represented an amount due on open account. The action against appellant was based upon his co-signing the two notes with his son, Pettis D. Walley, and signing a letter of guaranty of his son's past and future debts with appellee.

Appellant's son, Pettis D. Walley, operated the Walco Oil Co. During the course of its business, Walco purchased refined petroleum products from the appellee. By early 1959, Walco had fallen in arrears in paying for those purchases. On January 31, 1959, and again on March 2, 1959, Pettis D. Walley signed the two notes in order to cover the accrued indebtedness to appellee, and in February, 1959, appellant sent a letter of guaranty to appellee; appellant also co-signed each of the notes.[1]

1. The note of January 31 was as follows:
"In accordance with the terms and conditions hereinafter set out, for value received I, We, or either of us, promise to pay to the order of The Bay Petroleum Corporation at its office in Houston, Texas, the sum of THIRTY THREE THOUSAND THREE HUNDRED SIXTY NINE and 88/100 ($33,369.88) DOLLARS together with interest computed on balances at the rate of six (6%) per cent per annum, said amounts to be repaid in installments in the following manner. Together with the payment of each invoice for products delivered to or for the account of Walco Oil Company, Richton, Mississippi, and in addition thereto I, we or either of us will remit the sum of approximately one (1) cent per gallon, that is to say, $50.00 on an approximate 5000 gallon transport load, or $35.00 on an approximate 3500 gallon transport load, said amount to be applied first toward the payment of interest at the rate set out above and the balance toward the reduction of the principal amount of this note.
"The Payors shall have the privilege at any time of making payments in excess of the regular payments specified herein or pay the entire unpaid balance at any time.
"It is understood and agreed that we are to pay all invoices for products within the discount terms and in addition and therewith the amounts as set out above to be applied to this note. It is agreed that if such payments and the amount to be paid on this note are not paid when due, the principal herein shall draw interest at the rate of eight (8%) per cent per annum from the date of such default, or failure on the part of the Walco Oil Company to purchase refined petroleum products exclusively from The Bay Petroleum Corporation shall cause the whole note to become due at once together with penalty interest at the option of the holder of the note. * * *"
The note of March 2 was similar, except that it was in the face amount of $23,550.29 and provided that "the principal amount of this note shall be incorporated with a note account represented by a promissory note dated January 31, 1959, and the payments as set out above shall not apply to each note but instead one such payment shall be applied toward the reduction of the aggregate amount of the two notes."
Appellant's letter of guaranty bore date of Jan. 31, 1959, and read as follows:
"I, Pettis Walley of Richton, Mississippi, hereby guarantee absolutely and unconditionally at all times unto you the payment of any indebtedness or balance of indebtedness of Pettis D. Walley and/or Walco Oil Company of Richton, Mississippi, which was incurred heretofore

Thereafter, Walco continued to purchase refined petroleum products from the appellee, and the principal amount of the notes was reduced to some extent. Nevertheless, Walco had, by May, 1960, run up over $50,000 in debts on open account with appellee. By May 25, appellee had in its possession thirty-three checks issued to it by Walco, which had been returned because of insufficient funds, in the total amount of $19,062.25. Appellee thereafter put Walco on a "cash basis", that is, it refused to deliver products to Walco unless cash or a certified check was tendered at the time of each delivery. Walco and appellee ceased to do business with each other on June 29, 1960. Appellee declared the notes to be due and payable and thereafter brought this suit.[2]

■■ It is the contention of appellee that it had the right to declare the notes due and payable because Walco ceased to purchase refined petroleum products "exclusively" from it.[3] In directing a verdict against Pettis D. Walley, the trial judge held that the notes had become due, and he so instructed the jury. He erred in so doing. The evidence conclusively established that Walco did purchase exclusively from appellee until June 29. The record shows that, thereafter, the assets of Walco were transferred to Pettis D. Walley's mother, who operated her own oil company. She made purchases of refined petroleum products from companies other than appellee. Although the record indicates that no purchases were made in the name of, or for the account of Walco Oil Co., after June 29, the jury could have inferred, in our opinion, that the exclusive purchase promise was violated when Walco's assets were transferred to Pettis D. Walley's mother and she thereafter purchased refined petroleum products from companies other than the appellee. It follows that on a new trial the question of whether the exclusive purchase promise was breached must be submitted to the jury; only if it was breached, was appellee justified, under the express terms of the notes and guaranty, in declaring the principal amounts due and payable.

■ During the trial, the defendants sought to introduce evidence tending to show that appellant's guaranty was made in reliance upon appellee's promise to sell refined petroleum products to Walco on terms competitive with the independent field. Appellant (and his son) contended that the appellee failed so to price its products, and that such failure, which constituted a breach of appellee's promise, was the cause of the Walleys' breach, if any. The trial judge excluded that evidence on the basis of the parol evidence rule. The parol evidence rule does not preclude the introduction of evidence showing a prior or contemporaneous agreement if the writing, or writings, constitute only a partial integration of

and which is incurred hereafter and in whatever form it may be evidenced, insofar as said indebtedness related to the delivery of refined petroleum products to and for the account of Pettis D. Walley and/or Walco Oil Company.

"This is to be a continuing guaranty and the extension of the time of payment or the acceptance of any sum or sums on account, or the acceptance of notes, drafts, or any security from said Pettis D. Walley and/or Walco Oil Company shall in no way weaken or impair the validity of this guaranty. Should any purchase hereafter made by Pettis D. Walley and/or Walco Oil Company, be not paid at maturity, you shall have the right to proceed against me at any time, without any notice whatsoever and without any proceeding or action against the said Pettis D. Walley and/or Walco Oil Company, and I hereby waive any demand whatsoever for payment."

2. Defendant Pettis D. Walley does not appeal from the directed verdict against him below.

3. By the express terms of the notes, the failure of Walco to purchase refined petroleum products exclusively from appellee is the only condition the occurrence of which can make the notes due and payable in their principal amount. The notes, and the letter of guaranty, do not contain any unconditional promise to pay by a date certain.

**544**

the agreement between the parties.[4] That is, if the writings are but a partial integration of the agreement, the rest of the agreement, or collateral agreements, may be shown through parol.

█ It follows, therefore, that where the issue is fairly raised by the evidence, the court must preliminarily and initially determine whether the writings in question were intended to, and do, constitute a complete integration of the agreement between the parties.[5] For the purpose of making that preliminary determination, the parol evidence rule is inapplicable; that rule comes into operation only after, and if, it is initially determined that the writings do in fact constitute the full agreement between the parties.[6]

█ When, therefore, the trial judge excluded the evidence offered by appellant, that appellee had agreed to sell its products on competitive terms, he was proceeding upon the assumption that the three writings in question did constitute a full integration of the agreement between the parties. We are of the opinion, and hold, that the three writings are so incomplete as to show on their face that they were not intended to constitute the full agreement between the parties.

█ In essence, the evidence offered, and rejected, went to show that, in addition to the recitation of consideration received, contained in the notes, there was promissory consideration to the appellant, namely, appellee's promise to sell the products to Walco on competitive terms. The only written consideration for appellant's promise of guaranty is the recital in the notes, "for value received". Of course, that recitation, being only the recital of a fact, could be contradicted in parol because, not being promissory, the recital is not part of the agreement.[7] In additon, since the

4. South Florida Lumber Mills v. Breuchaud, 5th Cir., 1931, 51 F.2d 490; Chism v. Omlie, 1960, 239 Miss. 576, 124 So.2d 286. See Corbin on Contracts, Sec. 583 (1960).

5. See South Florida Lumber Mills v. Breuchaud, supra note 4. The rule has been correctly stated as follows: "Before the parol evidence rule can be applied in any given situation the court must determine the preliminary question whether the documents upon which it is invoked were in fact intended by the parties as an integration of their entire agreement. Regardless of what state law applies * * * that is the general principle which underlies the rule and is the law everywhere." Delzell v. Central Public Utility Corp., D.C.Del.1943, 56 F.Supp. 25, 28.

6. The procedure to be followed has been succinctly stated as follows:
"Thus, parol evidence is admitted in separate stages; first to prove that the collateral transaction was not intended to be included in the writing; secondly and only after the court is satisfied as to this, to prove that the collateral bargain was actually made and its terms." Simpson on Contracts. Sec. 65 (1954).
In explaining the procedure to be followed, Wigmore states: "Thus the apparent paradox is committed of receiving proof of certain negotiations in order to determine whether to exclude them; and this doubtless has sometimes seemed to lower the rule to a quibble. But the paradox is apparent only. The explanation is that these alleged negotiations are received only provisionally. Although in form the witnesses may be allowed to recite the facts, yet in truth the facts will be afterwards treated as immaterial and legally void, if the rule is held applicable. * * * If [the court] decides that the transaction was covered by the writing, [it] does not decide that the excluded negotiations did not take place, but merely that *if* they did take place they are nevertheless legally immaterial. If [it] decides that the transaction was not intended to be covered by the writing, [it] does not decide that the negotiations did take place, but merely that *if* they did, they are legally effective, * * *
"In this anomalous process, it merely happens that some of the conduct and other data which are at first resorted to *evidentially* on the question of intent are usually identical with the conduct that may subsequently be treated as legally *inoperative;* but this is a mere coincidence." IX Wigmore on Evidence Sec. 2430 (3d ed. 1940). See also Sec. 2431 and 3 Corbin on Contracts. Secs. 573, 582 (1960).

7. Boatright v. Horton, 1960, 227 Miss. 698, 86 So.2d 864, 867–868 and authorities there cited. See also Bleuler v. Indian Co., 1960, 237 Miss. 574, 115 So.2d 537.

writings constituted only a partial integration of the agreement, the appellant could show the existence of additional, promissory consideration for his promise of guaranty.[8]

■ On a new trial, therefore, any evidence offered by appellant to show the existence of a collateral promise by appellee to sell its products to Walco on a competitive basis, is to be admitted. In addition, the appellant sought to introduce evidence that appellee had agreed to sell the products "on terms". Only if the trial judge initially determines that that evidence directly contradicts the recitation in the notes that the invoices will be paid "within the discount terms", rather than explaining, or adding to, the recitation, should he exclude that evidence.[9] Of course, it will be for the jury to determine whether the appellee did, in fact, make the promises as alleged by appellant.

■ The appellant further complains that the trial court improperly excluded evidence showing a *subsequent* modification of the writings. Although, from an examination of the record, we do not find any ruling calling for a reversal on this point, we do point out that the parol evidence rule does not preclude the introduction of evidence showing a subsequent modification or variation in the terms of the agreement.

■ To some extent at least, the appellant has sought to inject considerations of equity into his defense. If fundamental equities do exist in this case, the parol evidence rule will not preclude the court's giving effect to them.[10]

■ If, as appellant alleges, his promise of guaranty was induced by cer-

tain promises of appellee not contained in the writings, and if the appellee subsequently breached those promises, appellant's liability was affected, not only on the promissory notes, but also on the open account, for which appellee also recovered judgment below. The same fundamental principles govern his liability on both the notes and the open account, namely, that he is not liable unless there has been default and, even if there is default, he cannot be held liable because of a breach directly occasioned by appellee's wrongful breach of its own collateral promises.

The judgment below is accordingly reversed and remanded for a new trial.

Reversed and remanded.

See also 3 Corbin on Contracts. Sec. 586 (1960).

8. See 3 Corbin on Contracts, Sec. 586 (1960).

9. Even in situations in which the writings are but a partial integration of the agreement, that part of the agreement which is reduced to writing cannot be contradicted by parol. However, we observe that the parol part of the agreement will nearly always affect the interpretation of the written part, and the trial court should, under the circumstances of this case, be reluctant to find that any agreement by appellee to sell to Walco on particular terms was superseded by the writings. See generally 3 Corbin on Contracts, Sec. 581 (1960).

10. See Polk County Natl. Bank of Bartow v. Shelton, 5th Cir., 1934, 69 F.2d 352.