**F. R. HOAR & SONS, INC.,**
**Plaintiff-Appellant,**

v.

**McELROY PLUMBING & HEATING COMPANY, d/b/a McElroy Plumbing Company, Defendant-Appellee.**

**No. 81–4440**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

July 23, 1982.

Charles L. Howorth, Jr., Jackson, Miss., for plaintiff-appellant.

Thomas L. Goldman, James E. Sandusky, Meridian, Miss., for defendant-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

F. R. Hoar & Son, Inc. (Hoar) appeals from a decision by the District Court denying it recovery in its breach of contract suit against a plumbing subcontractor. We affirm.

Hoar, a Delaware corporation with its principal place of business in Alabama, has a contract to construct Morrison's Cafeterias throughout the southern states. The logical course of business eventually brought it to Meridian, Mississippi, for the construction of a cafeteria in the Village Fair Mall. Hoar sent its employee, David Skaggs, to solicit bids for subcontracting. In August 1978, Skaggs invited McElroy Plumbing & Heating Co. (McElroy) to submit proposals for work under Section 15A of the plans and specifications. Pursuant

---

to Skaggs' precise instructions, Floyd Shannon, a long-time McElroy employee and plumber's helper, prepared three separate prices for: (1) the plumbing and gas piping called for under Section 15A of the specification; (2) the steam piping, condensate return piping, and related air conditioning piping—the remainder of the Section 15A work; and (3) the relocation of a water main and fire hydrant.

Shannon gave his computations to McElroy, president of the company, who added an estimated labor charge and profit margin. David McElroy, another employee, then telephoned the bids to Skaggs.

McElroy's final price figures broke down as follows: $58,239.00 for the plumbing and gas piping work listed (1) above; $13,984.00 for the steam piping, item (2); and $6,764.00 for removal of the water main, marked (3) above.

Meanwhile, the plot thickened as Edwin Heblon, owner of Heblon Air Conditioning Company of Meridian, submitted a bid for the heating, ventilation and air conditioning (HVAC) portion of the project. His bid of $98,880.00 was "with McElroy plumbing only"—he would only accept the job if McElroy secured the plumbing subcontract.

Heblon's bid apparently threw a wrench into Skaggs' calculations. When he tallied the bids to arrive at a combined mechanical bid (HVAC and plumbing), he double-counted, inserting McElroy's $13,984.00 figure in both McElroy's bid and in Heblon's.

On August 31, 1978, Hoar submitted its bid to Morrison's for the complete project. Skaggs' prior error in double-counting apparently engendered further errors. Mistakenly using McElroy's estimate (1) for the plumbing and gas piping ($58,239.00) as its bid for the entire plumbing work under Section 15A—items (1) and (2)—Hoar projected a total cost of $672,100.00. Skaggs telephoned David McElroy to inform him that he had the plumbing bid. McElroy asked him about the other two items—the $13,984.00 and $6,674.00 jobs—and Skaggs told him not to worry because Heblon had not been hired and the City had agreed to move the water main.

Hoar sent McElroy the subcontract, which provided that McElroy would perform all the necessary work under Section 15A for the sum of $58,239.00. McElroy, assuming that Hoar only wanted him to complete the item (1) plumbing and gas piping, signed the contract and mailed it back.

When Hoar summoned a preconstruction meeting on October 18, 1978, Floyd Shannon, representing McElroy, realized that something was amiss. A quick check disclosed that Hoar expected McElroy to perform work that fell within the $13,984.00 bid as well as $58,239.00 item. McElroy then advised Hoar that it would not perform for $58,239.00. Hoar subsequently contracted with another plumbing company to perform all the plumbing work for $68,100.00. Hoar in this suit seeks the difference between its final costs and the contract price, a difference totaling $9,861.00.

The facts, as set forth above, track the factual findings of the District Court. The judge found that the contract did not amount to a "definite and complete statement of the agreement between [the parties]" due to Skaggs' error, that Skaggs should have realized there was an error since McElroy's bid was some $10,000 less than the next lowest one, and that McElroy followed Skaggs' instructions as to the preparation of the bid. After reviewing the record, we have no quarrel with these findings, which stand well above the "clearly erroneous" threshold of F.R.Civ.P. 52(a). *See Kingville Independent School District v. Cooper*, 611 F.2d 1109, 1113 (5th Cir. 1980); *Texas Urethane, Inc. v. Seacrest Marine Corp.*, 608 F.2d 136, 138 (5th Cir. 1979), *quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948) ("a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed"). No such conviction troubles us here.

The District Court, relying upon Mississippi law in this diversity action, concluded that the parol evidence rule did not bar McElroy's evidence. We agree.

The parol evidence rule does not apply, unless both parties to a contract have consented to it as a complete and accurate integration of that contract. The particular writing asserted by Broome to constitute the contract is claimed by Beaver Lake not to be a complete and accurate integration of that instrument, because it omits the FHA approval clause. The testimony for appellee, admitted in evidence, contested the completeness of the document offered by appellant. This was an issue of fact. 3 Corbin on Contracts § 573 (1960). In short, the parol evidence rule does not become applicable unless there is an integration of the agreement, that is, unless the parties have assented to a certain writing as a statement of the agreement between them. Accordingly, it may be shown by parol evidence not only that the contract was never executed or delivered as a contract, but also that the proffered instrument was not the complete contract, or that its validity was impaired by fraud, illegality, duress, mistake, lack of or failure of consideration rendering the agreement voidable or void.

*Broome Construction Co. v. Beaver Lake Recreational Center, Inc.,* 229 So.2d 545 (Miss.1970). *See also Noble v. Logan-Dees Chevrolet-Buick, Inc.,* 293 So.2d 14 (Miss. 1974) (no mistake, parol evidence rule applies); *Stinson v. Barksdale,* 245 So.2d 595, 598 (Miss.1971) (parol evidence is "admissible to show in what manner the contract had been executed by the parties"). As this Court has held, in construing Mississippi law,

It follows, therefore, that where the issue is fairly raised by the evidence, the court must preliminarily and initially determine whether the writings in question were intended to, and do, constitute a complete integration of the agreement between the parties. For the purpose of making that preliminary determination, the parol evidence rule is inapplicable; the rule comes into operation only after, and if, it is initially determined that the writings do in fact constitute the full agreement between the parties.

*Walley v. Bay Petroleum Corporation,* 312 F.2d 540 (5th Cir. 1963). *See* 3 Corbin on Contracts § 573.

After hearing the parol evidence, the District Court found that a unilateral mistake as to the terms of the work to be performed prevented the parties from entering into a contract. Thus he refused to enforce the agreement.

We believe the District Court acted correctly and properly.

AFFIRMED.