524 So.2d 290 (1986)
UNIFIRST FEDERAL SAVINGS & LOAN ASSOCIATION and Tom B. Scott III, Trustee
v.
TOWER LOAN OF MISSISSIPPI, INC.
No. 55953.
Supreme Court of Mississippi.
November 19, 1986.
Rehearing Denied May 11, 1988.
*291 Patrick F. McAllister, Dalton McBee, Jr., Scott, Hetrick & McBee, Jackson, for appellant.
William J. Lutz, E. Stephen Williams, Young, Scanlon & Sessums, Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the court:

I.
This case presents the question whether the holder of a second deed of trust on real property, through foreclosure and thereby obtaining title to the property via a trustee's deed, triggered the due-on-sale clause contained in the first deed of trust so that its holder could accelerate its debt and failing payment, foreclose.
We hold that the due-on-sale clause in the first deed of trust may be enforced according to its tenor, answer the question presented in the affirmative, and reverse.

II.
Mickey P. Ellzey and Marilyn D. Ellzey executed a deed of trust in favor of Unifirst on August 22, 1977, to secure a note for $28,000.00, accruing interest at a rate of 9 3/8 percent per annum. The deed of trust contained a standard "due-on-sale" clause which is the focal point of this dispute. Paragraph 17 reads in part as follows:
If all or any part of the property or an interest therein is sold or transferred by borrower without lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this deed of trust, ... lender may at lender's option declare all the sums secured by this deed of trust to be immediately due and payable.
On June 4, 1979, the Ellzeys executed a second deed of trust on the same property in favor of Central Finance Services, Inc. On September 7, 1983, Central sold and assigned that second deed of trust to Tower Loan of Mississippi. The deed of trust purchased by Tower Loan secured a note in the principal amount of $14,299.32, with interest at a rate of 18.44 percent per annum.
When the Ellzeys defaulted on the obligation secured by the Tower Loan second deed of trust, Tower Loan instituted foreclosure proceedings against the property. On October 20, 1983, the substitute trustee under the Tower Loan deed of trust conducted a public foreclosure sale; at that sale Tower Loan purchased the property for $12,127.86. The fair market value of the property was approximately $40,000.00. On that same day, October 20, 1983, the substitute trustee delivered his deed to Tower Loan.
Although there is dispute about when Unifirst first became aware of transfer of title to the property, the record shows that Tower Loan tendered and Unifirst accepted on January 18, 1984, $848.88  the amount due to Unifirst under the Ellzey deed of trust for the three months of November and December, 1983, and January, 1984. Nevertheless, on March 12, 1984, Unifirst invoked the due-on-sale clause contained in its first deed of trust and declared its entire indebtedness immediately due and payable.
*292 On April 23, 1984, Tower Loan commenced this civil action by filing in the Chancery Court of Hinds County its complaint seeking of and against Unifirst declaratory, injunctive and other relief. In due course the Chancery Court enjoined Unifirst from acceleration and foreclosure, construing the due-on-sale clause to "except" both the creation and enforcement of the Tower Loan second mortgage security interest. From this adverse ruling, Unifirst has appealed.

III.
We regard the due-on-sale clause of the Unifirst deed of trust as privately made law which may be enforced according to its tenor against any party thereto, absent disabling provisions in our positive law. First National Bank of Vicksburg v. Caruthers, 443 So.2d 861, 864-65 (Miss. 1983). The question then is whether the property subject to the deed of trust has been "sold or transferred by the borrower," it being undisputed that Unifirst has given no prior written consent.
We consider that the best reading that may be given the undefined phrase "sold or transferred" within this Unifirst deed of trust encompasses any conveyance of the real property held in trust or any right, title or interest therein, whether legal or equitable, whether voluntary or involuntary, by outright sale, deed, contract, leasehold, option or judicial foreclosure, private power of sale foreclosure, enforcement of any other lien or encumbrance, or any other forced sale or any other method of conveyance. Compare 12 C.F.R. § 591.2(b) (1984). These words do not include the granting of a lien, encumbrance or other security interest. They do include the enforcement, execution or foreclosure of any such lien, encumbrance or other security interest which results in another party acquiring all of the incidents of ownership. There is nothing in federal law to the contrary. See Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. § 1701j-3 (Supp. 1984); Federal Home Loan Bank Board Regulations at 12 C.F.R. Part 591 (1984).
The language of the deed of trust at issue requires sale or transfer by "borrower," the Ellzeys. Tower Loan argues that transfer of title by substitute trustee's deed is not a transfer by the borrower. The point is specious. Under our law a conveyance by a trustee's deed is a conveyance by an agent of the grantor (the Ellzeys) and has the same legal effect as if the Ellzeys had executed the deed themselves. Vincent v. J.W. McClintock, Inc., 200 Miss. 445, 455, 27 So.2d 681, 682 (1946).
Tower Loan attacks as irrational a reading of the due-on-sale clause which would allow creation of a subordinate security interest in the collateral with impunity but give the holder of the first security interest acceleration rights upon foreclosure of the subordinate security interest. Fundamentally, Tower overlooks the fact that, with exceptions not relevant here, nothing in our law disables private parties from making and enforcing contracts some may regard as irrational. But the creation/enforcement dichotomy is not irrational. It strikes us as commercially reasonable.
Our law allows a first mortgage lender to prohibit sale or transfer of the collateral without consent. First National Bank of Vicksburg v. Caruthers, 443 So.2d at 864-65. This it may do because it believes the value of the collateral may suffer at the hands of its new occupant, because it believes its prospect of payment impaired, because it wants to get out from under a long term low yield loan, and no doubt for other reasons. While our law should facilitate home equity/second mortgage loans, no reason has been advanced why this should be done at the expense of the contractual rights of the first mortgage holder. It makes sense that a first mortgage holder be prohibited from acceleration or other objection upon the creation of a second mortgage, for nothing done thereby invades or prejudices any legitimate right or expectation of the first mortgage holder. The second mortgage lender merely acquires a security interest in the homeowner's equity, by definition, only to the *293 extent that the first mortgage holder has no interest in it.
Foreclosure of the second mortgage is another matter, for it transfers title, all incidents of ownership, and occupancy to third parties with whom the first mortgage holder has not dealt. The first mortgage holder may legitimately contract with its original borrower for acceleration rights in the event of such a transfer. No reasonable expectation of the home equity/second mortgage holder is thwarted. By definition his security interest is wholly subject to all rights of prior encumbrancers. See Peoples Bank & Trust Co. v. L & T Developers, 434 So.2d 699, 708 (Miss. 1983). While our law affords him several practical means of protecting himself against prior encumbrancers, none may require that we deprive that prior encumbrancer of its valid and enforceable rights created or existing under private or public law.
In summary, we hold that the due-on-sale clause in paragraph 17 of the Unifirst deed of trust is a valid contractual provision enforceable according to its tenor. The terms of that provision were triggered on October 20, 1983, when the substituted trustee executed and delivered his deed to Tower Loan. Unifirst acted seasonably in enforcement of its rights under paragraph 17 when, on March 12, 1984, it declared the entire indebtedness secured by the first deed of trust due and payable. First National Bank of Vicksburg v. Caruthers, 443 So.2d 861, 864-65 (Miss. 1983); Unifirst Federal Savings & Loan Association v. Bowen, et al, Civil Action No. J83-0697(L) (S.D.Miss., August 17, 1984) [available on WESTLAW, 1984 WL 3290]. That indebtedness not having been paid, Unifirst is entitled to proceed with foreclosure action. As there are other issues in the case which have not been considered and decided in the Chancery Court, the case is not this day ripe for final resolution. The judgment below is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., dissents.
GRIFFIN, Justice, dissenting to denial of petition for rehearing:
With deference, I respectfully dissent to the denial of the Petition for Rehearing.
On August 22, 1977, Mickey and Marilyn Ellzey executed a deed of trust, which listed Unifirst Federal Savings & Loan Association as the lender. The agreement read in part:
17. Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Deed of Trust to be immediately due and payable. (emphasis added)
The majority, citing 12 C.F.R. § 591.2(b) (1984), now attempts to define the words "sold or transferred:"
[A]ny conveyance of the real property held in trust or any right, title or interest therein, whether legal or equitable, whether voluntary or involuntary, by outright sale, deed, contract, leasehold, option or judicial foreclosure, private power of sale foreclosure, enforcement of any other lien or encumbrance, or any other forced sale or any other method of conveyance.
The majority concludes that such a definition does not include the "granting of a lien, encumbrance or other security interest," but does include "enforcement, execution, or foreclosure of any such lien." (emphasis in the original).
*294 Significantly, 12 C.F.R. § 591.2(b) makes no such distinction between the grant and enforcement of a subordinate security interest;[1] rather, the majority, though admitting that the deed of trust's terms are "privately made law which may be enforced according to its tenor," imposes an artificial distinction between the grant and enforcement of a security interest, oblivious to the words that Unifirst chose to define its rights.[2]
In particular, the deed of trust held that the creation of a lien or subordinate encumbrance was an exception to the agreement's provision requiring Unifirst's prior written consent to any sale or transfer of the property. Regardless then of whether the majority now opines that the grant of security interest fails to constitute a sale or transfer, it is clear that Unifirst and the Ellzeys understood it as such.[3]
Previously, this Court has required "clear and unequivocal" contract language to permit the acceleration of debt; consequently, if there is reasonable doubt concerning the contract's meaning, there is a preference against the acceleration of debt. Boatright v. Horton, 227 Miss. 698, 708-9, 86 So.2d 864, 868 (1956). See also, Frey v. Abdo, 441 So.2d 1383, 1385 (Miss. 1983). In this case, the chancellor found that the terms of the acceleration clause were not met. We who dissent agree. Obviously then, the contract's meaning is neither clear nor unequivocal, since there is reasonable doubt about its meaning.
In addition, the record reveals that Unifirst accepted payments, totalling $3,997.38, from Tower Loan after Tower Loan's foreclosure on the property. Miss. Code Ann. § 89-1-59 (Supp. 1987) reads,
Where there is a series of notes or installment payments secured by a deed of trust, mortgage or other lien, and a provision is inserted in such instrument to secure them to the effect that upon a failure to pay any one (1) note or installment, or the interest thereon, or any part thereof, or for failure to pay taxes or insurance premiums on the property described in such instrument and the subject of such lien, that all the debt secured thereby should become due and collectible, and for any such reason the entire indebtedness shall have been put in default or declared due, the debtor, or any interested party, may at any time before a sale be made under the terms and provisions of such instrument, or by virtue of such lien, stop a threatened sale under the powers contained in such instrument or stop any proceeding in any court to enfore such lien by paying the amount of the note or installment then due or past due by its terms, with all accrued costs, attorneys' fees and trustees' fees on the amount actually past due by the terms of such instrument or lien, rather than the amount accelerated, and such taxes or insurance premiums due and not paid, with proper interest thereon, if such should have proper interest thereon, if such should have been paid by any interested party to such instrument. Any such payment or payments shall reinstate, according to the terms of such instrument, the amount so accelerated, the same as if such amount not due by its terms had not been accelerated or put in default. (emphasis added)
Tower Loan's payments to Unifirst included the amount past due, accrued costs, and attorney's fees. Therefore, Tower Loan, as an "interested party to such instrument," reinstated the debt under the statute.
Finally, the majority notes that the law "allows a first mortgage lender to prohibit *295 sale or transfer of the collateral without consent." Here, Unifirst expressly created an exception to this rule, allowing the Ellzeys to execute a second deed of trust on the property. As Chancellor Barnett stated in his opinion below: "[I]t would mean very little for the owner of the property to have the right to execute a second deed of trust to borrow money if the lender under such a second deed of trust were not permitted to enforce his rights under the second deed of trust."
The effect of the majority's ruling will be to limit the availability and increase the cost of equity loans, since secondary lenders must now face a new threat to their security in the event of a foreclosure. Such a ruling harms the homeowner, contradicts the deed of trust at issue, and is inconsistent with our law.
ROY NOBLE LEE, C.J., and DAN M. LEE, P.J., join this dissent.
NOTES
[1] 12 C.F.R. § 591.2(b) does not mention either foreclosures or liens.
[2] 12 U.S.C. § 1701j-3(b)(2) reads in part:

"[T]he exercise by the lender of its option pursuant to such a clause shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the lender and the borrower shall be fixed and governed by the contract."
[3] 12 U.S.C. § 1701j-3(b)(3) reads,

In the exercise of its option under a due-on-sale clause, a lender is encouraged to permit an assumption of a real property loan at the existing below the average between the contract and market rates, and nothing in this section shall be interpreted to prohibit any such assumption.