# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1997-CA-01255

### CONSOLIDATED WITH
### NO. 1999-CA-01589-SCT

*AMERICAN INVESTORS, INC.*

*v.*

*STANLEY KING, CAROL KING AND RICHARD H. YOUNG, TRUSTEE*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/1999 |
| TRIAL JUDGE: | HON. JOHN T. KITCHENS |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | R. CHARLES ROBB |
| ATTORNEY FOR APPELLEES: | RICHARD H. YOUNG |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 03/15/2001 |
| MOTION FOR REHEARING FILED: | 3/29/2001; denied 10/11/2001 |
| MANDATE ISSUED: | 10/18/2001 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. The Rankin County Circuit Court, sitting as an appellate court, affirmed the Rankin County Court's judgment awarding title and possession of certain residential property (the property) to Stanley King. American Investors, Inc. (American) which claimed title to the property by virtue of an assumption deed executed by prior owner John H. Smith, aggrieved by this decision, now appeals to this Court raising a single issue, as follows:

> **I. DID THE LOWER COURT ERR BY FINDING THAT THE BENEFICIARY TO THE DEED OF TRUST MAY FORECLOSE ON THE DEED OF TRUST BY ACCELERATING THE "DUE ON SALE" CLAUSE WHEN THE BORROWER HAS ALIENATED TITLE BY TRANSFERRING THE PROPERTY TO A THIRD PARTY WITHOUT THE BENEFICIARY'S KNOWLEDGE OR CONSENT?**

We find that the decisions of the courts below were not erroneous, and we affirm.

## STATEMENT OF FACTS

¶2. In 1987, John H. Smith purchased a fee simple interest in the real property and executed a deed of trust in favor of Unifirst Bank For Savings (Unifirst) securing a thirty-year adjustable rate promissory note in the amount of $81,600. Subsequently, the Resolution Trust Corporation (RTC), as receiver for Unifirst,

acquired the Smith note and deed of trust, and in November 1991 RTC assigned its interest in the promissory note and deed of trust to First Boston Mortgage Capital Corporation (First Boston). Smith filed for Chapter 7 bankruptcy, and the bankruptcy trustee abandoned[1] the property. No reaffirmation agreement was executed by Smith, and he physically abandoned the property. On January 19, 1993, Smith was discharged by the bankruptcy court.

¶3. Stanley King purchased the promissory note and deed of trust from First Boston on March 24, 1993, properly recorded the assignment, and took possession of the property. On April 5, 1993, King appointed a substitute trustee of the deed of trust, in anticipation of foreclosure on the property.

¶4. On April 15, 1993, King received a letter from American's attorney, R. Charles Robb, informing him that American had purchased the property from Smith on April 8, 1993, and by virtue of the assumption deed[2] to American, it was the owner of the property. The letter demanded that King move or pay rent. King invoked the "due-on-sale" clause of the deed of trust, notifying Smith (by letter dated May 5, 1993) that pursuant to the deed of trust and promissory note, interest in the property transferred required the lender's prior written consent which Smith did not obtain, and which King did not give. King advised Smith that he had thirty days to pay the amount due on the indebtedness, which was $113,215.33 plus $24.22 per diem interest, plus $34.32 late fees each month. He further advised Smith of his right and intent to foreclose if not timely paid.

¶5. Smith did not respond or pay, and after thirty days, the substitute trustee initiated foreclosure proceedings. The notice of sale was properly posted and published, and the property was sold to King for $85,000.00 as the highest bidder at the trustee's sale held on July 9, 1993. The trustee then executed and properly recorded a Substitute Trustee's Deed conveying title to King.

## ANALYSIS

¶6. American asserts that the county court and circuit court misread the applicable law and that the case should be reversed for further hearings. It argues that the lower courts erred by finding that the language of the mortgage acted as a bar to the mortgagor's alienating title. King responds that the lower courts correctly found that the "due-on-sale" clause was properly exercised and that the foreclosure was lawfully executed, thereby invalidating the assumption deed from Smith to American. King does not argue that the mortgagor may not alienate title to a third party. He argues that if the mortgagor does so, it is subject to terms and conditions of the deed of trust, which in this instance, included a "due on sale" clause. The pertinent language of the mortgage provides:

> 17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. . . .

> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument . If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

¶7. The county court, in its Findings and Opinion, stated:

> 7) No money or value was received by Lender (King) upon the transfer from Smith to American.
>
> It is the opinion of this Court that Smith at all times had the right to reinstate; however, when Smith deeded his interest in the subject property to American without the prior written consent of Lender (King) required under Paragraph 17 of the Deed of Trust, the transfer was not valid. It logically follows that if there was no valid transfer, American has no standing to complain, and the Lender (King) could foreclose. Assuming arguendo that American had a valid deed, Lender (King) would still have the right to exercise the "due on sale" clause and demand all monies which would have required American to pay to King some $113,530.19 as of April 21, 1993, and $24.22 per day interest and $34.32 per month late charge transfer.

¶8. The cases of *First Nat'l Bank v. Caruthers*, 443 So.2d 861 (Miss. 1983) and *Unifirst Fed. Sav. & Loan Ass'n v. Tower Loan of Miss., Inc.,* 524 So. 2d 290 (Miss. 1986) are on point and instructive in this case. In *Caruthers*, a purchaser executed a deed of trust in favor of First National Bank. *Caruthers*, 443 So. 2d at 862. The deed included a "due-on-sale" clause. With the bank's permission, the purchaser conveyed the property to a third party who assumed the balance due on the original note. Thereafter, the third party sold the property to Caruthers who assumed the outstanding balance without the bank's permission. *Id.* When the bank exercised the "due-on-sale" clause, the chancery court enjoined the foreclosure proceedings. *Id.* This Court, in reversing and rendering the cause, upheld the "due-on-sale clause" as enforceable against the subsequent purchasers. *Id.* at 864. This Court stressed the validity and binding nature of this type of contractual provision voluntarily entered into by the original parties to a deed of trust. *Id.* at 863-64.

¶9. The appellees in *Caruthers* had relied upon *Sanders v. Hicks*, 317 So.2d 61 (Miss. 1975), in which this Court held invalid and unenforceable a clause in a deed prohibiting the owner from selling absent consent of the mortgagee. *Caruthers,* 443 So.2d at 864. In <u>overruling</u> that aspect of *Sanders*, the *Caruthers* Court stated, "The right of persons to contract is fundamental to our jurisprudence and absent mutual mistake, fraud and/or illegality, the courts do not have the authority to modify, add to, or subtract from the terms of a contract validly executed between two parties." *Id.* at 863-64 (citations omitted).

¶10. American attempts in vain to apply the foregoing statement to the rights of the holder of a quit claim deed. It is clearly the right of the <u>mortgagee,</u> and not of the mortgagor who attempts to alienate title to a third party where a valid "due-on-sale" clause exists. That the rights to which the Court referred in *Caruthers* were those of the prior encumbrancer is made clear in *Unifirst.* There, this Court addressed whether the holder of a second mortgage who foreclosed, thereby obtaining title by a trustee's deed, triggered the "due-on-sale" clause. The Court opined:

> While our law should facilitate home equity/second mortgage loans, no reason has been advanced why this should be done at the expense of the contractual rights of the first mortgage holder. . . . Foreclosure of the second mortgage. . . transfers title, all incidents of ownership, and occupancy to third parties with whom the first mortgage holder has not dealt. The first mortgage holder may legitimately contract with its original borrower for acceleration rights in the event of such a transfer. No reasonable expectation of the home equity/second mortgage holder is thwarted. By definition his security interest is wholly subject to all rights of prior encumbrancers.

*Unifirst,* 524 So. 2d at 292-93.

¶11. The Court in *Caruthers* found that the following policies make "due-on-sale" clauses reasonable and thus enforceable: "(1) the clause represents an equitable adjustment of rights between borrower and lender, (2) it may prevent State-chartered banks from operating at a competitive disadvantage with federally-chartered banks, and (3) it is a substantial benefit to the bank's depositors and to the future borrowers from the bank." *Id.* at 862. In addressing economic concerns as relate to institutional lenders, this Court, in *Caruthers*, noted:

> [I]nflation has many causes, and the right to enforce a due-on-sale clause no more causes rising interest rates than the exercise of a borrower's right to prepay his loan causes declining interest rates, or the carrying of an umbrella causes inclement weather. Both the right to prepay and the right to accelerate upon sale are protective devices relied upon by the community to moderate gains and losses in an uncertain economy. Because the due-on-sale clause is counterbalanced by the borrower's statutory right to prepay; because federally chartered institutions might continue to enforce it as a matter of Federal regulation irrespective of State court holdings; and because the clause offers substantial benefits to depositors and future borrowers, **we conclude that if the clause does restrain alienation it does not do so unreasonably.**

*Id.* at 863 (emphasis added).

¶12. American strains to distinguish *Caruthers* from the instant case. American argues that, "[i]n *Caruthers*, the mortgage prohibited sale and was a bar to a valid sale. In the present case, the mortgage makes no such prohibition but rather triggers acceleration upon alienation of title - 'If. . . the Property. . . is sold. . .'". American asserts that the difference in the specific language of the contracts requires that the "due-on-sale" clause in the instant case should not be given effect. However, in light of the clear logic and reasoning in *Caruthers* and *Unifirst,* in which this Court upheld the rights of prior encumbrancers as superior, American's argument is not persuasive.

## CONCLUSION

¶13. We agree with the courts below that to accept American's argument would deny effect to the "due-on-sale" protection clause where this Court has upheld such clauses to be valid and enforceable. King, as successor in interest to Unifirst, properly exercised the "due-on-sale" clause. For the foregoing reasons, the judgments of the circuit and county courts are affirmed.

¶14. **AFFIRMED.**

> **PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, DIAZ AND EASLEY, JJ., CONCUR. WALLER, J., NOT PARTICIPATING.**

1. The Notice of Proposed Abandonment filed by the Trustee on March 14, 1991, showed Unifirst as holder of the first mortgage on the property.

2. The deed recites that "John H. Smith does hereby quitclaim, sell, convey, warrant, assign and transfer unto American Investors, Inc., a Mississippi corporation, all his rights, title, and interest in and to [the property]...."